## PRINCE GEORGE'S COUNTY, MARYLAND
### *v.* WHITE ET AL.

[No. 196, September Term, 1974.]

*Decided June 26, 1975.*

*Motion for rehearing filed July 16, 1975; denied August 1, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Harry L. Durity, Deputy County Attorney,* with whom was *Joseph S. Casula, County Attorney,* on the brief, for appellant.

*Elliot P. DeMatteis,* with whom were *John W. Mitchell* and *Mitchell, Clagett & Haskell* on the brief, for appellees.

LEVINE, J., delivered the opinion of the Court.

In this appeal from the Maryland Tax Court, we are called upon to reconcile two provisions of Maryland Code (1957, 1975 Repl. Vol.) Art. 81, § 277, enacted at the 1968 session of the General Assembly, which pertain to the tax imposed upon the recordation of certain written instruments. Prince George's County (the county), appellant herein, appeals from a decision in favor of two taxpayers. The latter had been unsuccessful in their claims for partial refunds of the recordation tax which they had presented to the County Council. Having then met with defeat at the hands of the Board of Appeals sitting as the Appeal Tax Court, they took their cases to the Maryland Tax Court (the tax court) where, as we have indicated, they did prevail.

The particular circumstances which led to this dispute require only a brief reference. On December 20, 1971, a deed of trust, which named appellee Charles W. White as the grantor, was recorded among the land records of Prince George's County. The principal amount of the debt thereby secured being $1,185,000, a recordation tax of $3,910.50 was assessed. A like instrument, with the other appellee, Kenland Corporation, as the grantor, was recorded on October 11, 1972. The principal amount of the debt secured in that instance was $1,500,000, in consequence of which a recordation tax of $4,950 was assessed. Both assessments were computed pursuant to a rate of $1.65 for each $500, or fractional part, of the debt secured.

Initially, appellees launched their challenge to the $1.65 rate by contending that the tax should have been $0.55 for each $500 of the amount of the debt secured. The decision of the tax court resulted in a rate of $1.10, with which appellees are seemingly in accord.

The recordation tax was first established as part of the General Taxation Act of 1937, enacted as Chapter 11 at a special session of the General Assembly that year. The

original rate was $0.10 for each $100, or fractional part thereof, of the principal amount of the debt secured. *Hammond v. Phila. Elec. Pwr. Co.*, 192 Md. 179, 182, 63 A. 2d 759, 6 A.L.R.2d 298 (1949). The "basic" rate ultimately came to be $0.55 for each $500, and subsection (b) of § 277 so provides today:[1] In recent years, however, by the enactment of additional subsections to § 277, the rate has been increased — in varying amounts — in the City of Baltimore and in a number of the counties. It is in consequence of such an enactment for Prince George's County in 1968 that this case has arisen. Prior to that year, recordations there were governed by the basic rate of $0.55 as specified in subsection (b).

Among the several changes made in § 277 at the 1968 session of the General Assembly were those which resulted from the passage of Chapters 301 and 452. Chapter 301 added a new subsection (r) "to follow immediately after section 277(q) thereof." Subsection (r), applicable solely to Prince George's County, reads:

> "*Notwithstanding the other provisions of this section* the County Commissioners of Prince George's County in lieu of the rate of tax provided in subsection (b) above, are authorized by resolution to adopt a rate of tax as follows: In the case of instruments conveying title to property, the tax shall be at the rate of $1.10 for each $500.00 or fractional part thereof of the actual consideration paid or to be paid; and in the case of instruments securing a debt, the tax shall be at the rate of $1.10 for each $500.00 of the principal amount of the debt secured. . . ." (emphasis added).

Approved on April 10, 1968, Chapter 301 became effective on July 1 of that year.

Chapter 452, also effective on July 1 of that year and approved on May 7, added a new subsection (q), which reads:

> "Every county and Baltimore City *may*, by

---

1. "[I]n the case of instruments securing a debt, the tax shall be at the rate of 55¢ for each $500.00 of the principal amount of the debt secured."

resolution or ordinance duly enacted by its governing body, fix the rate of tax imposed by this subtitle. In the absence of such resolution or ordinance, the rates specified in this subtitle shall continue to apply." (emphasis added).

It is the superficial conflict between these two enactments which we must resolve here.

On May 10, 1968, exactly one month after Chapter 301 — enacting subsection (r) — had been signed into law, the County Commissioners for Prince George's County, expressly acting pursuant thereto, adopted General Resolution No. 21, which set the recordation tax rate at $1.10 effective July 1, 1968. On September 13 of that year, however, the county commissioners adopted Resolution No. 32, which repealed and reenacted No. 21 effective immediately. The result of that action was to increase the recordation tax rate to $1.65 for all instruments executed thereafter.

Relying on subsection (r) — which fixed the rate at $1.10 — appellees took the position, in pressing their rebate claims, that the second resolution was a nullity. Arguing that no other valid resolution was then operative, they claimed that the only applicable rate was $0.55 as set forth in subsection (b). Thus, they sought refunds of two-thirds of the sums which each had paid.[2] The tax court ruled that subsection (r) was controlling, and hence the proper rate, as therein provided, was $1.10. In effect, it regarded the first resolution as subsisting in view of the invalidity of the second. The county maintains that subsection (q), pursuant to which it acted in adopting the second resolution, permits every county and the City of Baltimore to set for itself the rate which it wishes to assess.

Notwithstanding the apparent conflict between subsections (q) and (r), we have no difficulty in harmonizing them. No rule of statutory construction is more

---

2. This position was modified when the proceedings reached the Maryland Tax Court. There, they were content to argue — as they do here — that the first resolution should apply, and that the proper rate was $1.10.

fundamental than that, in ascertaining the intention of the Legislature, we are to read all parts of a statute together to find the intention as to any one part; and that all parts are to be reconciled and harmonized if possible. *A. H. Smith Sand & Gravel v. Dep't*, 270 Md. 652, 659, 313 A. 2d 820 (1974); *Parker v. Junior Press Printing*, 266 Md. 721, 725, 296 A. 2d 377 (1972); *Prince George's Co. v. Beard*, 266 Md. 83, 91, 291 A. 2d 636 (1972). Although explicitly professing obeisance to this rule, the county nevertheless appears to argue that any inconsistency between subsections (q) and (r) should be reconciled by ignoring the latter. In other words, it seems to take the position that Chapter 301 — as embodied in subsection (r) — was intended to apply if subsection (q) should never come to fruition; but once the latter emerged, it was to be controlling. Hence, the county could set the tax rate in any amount it wished by merely adopting a resolution to that effect without regard to the $1.10 limitation in subsection (r).

Despite its express disavowal to the contrary, the county clearly is in the position of arguing that the two enactments are irreconcilable, and therefore Chapter 452, as the latest one enacted, should prevail. We disagree with the tacit premise that the two enactments cannot be reconciled. As we see it, the basic rates are set at $0.55 in subsection (b). By subsections (m), (n), (o), (p), and (r), the rates in the City of Baltimore and in 16 of the 23 counties, including Prince George's, are fixed in some other specific amount. Subsection (q), which merely allows "[e]very county and Baltimore City" to fix the rate by resolution or ordinance, is presently not operative in any of those counties and the City of Baltimore. In the remaining counties — presently seven in number — the rates specified in subsection (b) apply in the absence of a resolution or ordinance, adopted pursuant to subsection (q), setting the rate in some other amount.[3]

Since the various provisions in § 277 pertaining to the

---

3. The record does not reveal whether any of those seven counties have availed themselves of subsection (q) by adopting a resolution or ordinance fixing the tax rate in a specified amount.

recordation tax-rate are neither irreconcilable nor mutually repugnant, they should be construed in harmony with their respective objects and tenor, *Bd. of Fire Comm'rs v. Potter,* 268 Md. 285, 294, 300 A. 2d 680 (1973); *Smith v. Gray Concrete Pipe Co.,* 267 Md. 149, 155, 297 A. 2d 721 (1972).

To sustain the contention advanced by the county would necessarily lead to one of two possible consequences, both of which are regarded with disfavor by this Court. To ignore subsection (r) entirely would either mean its repeal by implication, a construction which should be avoided, *see Bd. of Fire Comm'rs v. Potter, supra; Planning Comm. v. Silkor Corp.,* 246 Md. 516, 524-25, 229 A. 2d 135 (1967); *Kirkwood v. Provident Savings Bank,* 205 Md. 48, 55-56, 106 A. 2d 103 (1954); or that it be regarded as superfluous. Absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no word, clause, sentence or phrase, let alone an entire subsection, shall be rendered surplusage, superfluous, meaningless or nugatory. *St. Paul Fire & Marine Ins. Co. v. Insurance Commissioner,* 275 Md. 130, 339 A. 2d 291 (1975); *A. H. Smith Sand & Gravel v. Dep't, supra,* 270 Md. at 659; *Baltimore City v. United Stores,* 250 Md. 361, 368-69, 243 A. 2d 521 (1968). Our construction of the statutory provisions in question obviates any resort to either of these alternatives.

We have said that when two acts of the Legislature covering similar subject matter make no reference to each other, they will be construed, if at all possible, so as to give full effect to each other. *City of Baltimore v. Clerk,* 270 Md. 316, 319, 311 A. 2d 261 (1973); *Prince George's Co. v. McBride,* 263 Md. 235, 240-41, 282 A. 2d 486 (1971). Here, however, recourse to the interstices of the statutes is unnecessary. As we noted earlier, Chapter 301 — enacting subsection (r) — expressly provides that the latter is "to follow immediately after" subsection (q). In short, while Chapter 452 technically may qualify as the "latest one enacted," if only because it was signed later, the General Assembly clearly anticipated its passage while enacting Chapter 301. If we were to adopt the construction advocated by the county, we would necessarily be assuming that the

Legislature, while enacting Chapter 452, was completely oblivious to Chapter 301 which it had just enacted. In any event, all possible doubts that the enactments were to be read together in complete harmony have been dispelled in this case.

In our view, the Maryland Tax Court was correct in ruling that the second resolution — fixing the rate at $1.65 — was a nullity, having been adopted without statutory authority. Subsection (r) — setting the rate at $1.10 — is controlling in Prince George's County.

*Judgment affirmed; appellant to pay costs.*