# CHARLES W. WHITE ET AL. *v.* PRINCE GEORGE'S COUNTY, MARYLAND

[No. 67, September Term, 1977.]

*Decided June 5, 1978.*

The cause was argued before MURPHY, C.J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Elliot P. DeMatteis,* with whom was *John W. Mitchell* on the brief, for appellants-cross appellees.

*James C. Chapin, County Attorney,* and *John R. Gober, Associate County Attorney,* with whom was *Michael O. Connaughton, Deputy County Attorney,* on the brief, for appellee-cross appellant.

ELDRIDGE, J., delivered the opinion of the Court.

The present case, involving disputes over certain recordation taxes in Prince George's County, arises out of a prior decision of this Court, *Prince George's Co. v. White,* 275 Md. 314, 340 A. 2d 236 (1975), and the General Assembly's response to that decision in Chs. 129 and 142 of the Acts of 1976.

On December 20, 1971, Charles W. White, et al., T/A Penn-Silver Partnership (hereinafter referred to as "White"), had recorded among the Prince George's County land records a deed of trust. On October 11, 1972, the Kenland Corporation ("Kenland") also had a deed of trust recorded among the land records of Prince George's County. Recordation taxes were assessed and paid on both deeds of trust at a rate of $1.65 for each $500.00, or fractional part, of the debts secured. White and Kenland then presented claims for partial refunds of the recordation taxes to the appropriate agency of Prince George's County. Being unsuccessful, the taxpayers took an appeal to the Board of Appeals sitting as the Appeal Tax Court, which upheld the County Council's decision. Upon White and Kenland's further appeal to the Maryland Tax Court, however, they prevailed, with the Tax Court determining that the proper rate was $1.10 for each $500.00 of the debts secured. Prince George's County then took an appeal directly to this Court, and on June 26, 1975, we affirmed the decision of the Tax Court, *Prince George's County v. White, supra,* 275 Md. 314.[1] We held that under the provisions of Maryland Code (1957, 1975 Repl. Vol.), Art. 81, § 277 (r), applicable only in Prince George's County, $1.10 for

---

1. The statutory provision then in effect, Ch. 385 of the Acts of 1971, Maryland Code (1957, 1975 Repl. Vol.), Art. 81, §§ 229 (i) and (l), provided for direct appeals to this Court from the Maryland Tax Court, which is an administrative agency. *See* Shell Oil Co. v. Supervisor, 276 Md. 36, 343 A. 2d 521 (1975).

each $500.00 debt was the correct recordation tax rate in that county.[2]

In response to the decision in *Prince George's Co. v. White, supra,* the General Assembly at its 1976 session passed as emergency legislation, and the Governor signed into law, Chs. 129 and 142 of the Acts of 1976. *See Blumenthal v. Clerk of Cir. Ct.,* 278 Md. 398, 406 n. 4, 365 A. 2d 279, 284 n. 4 (1976).

Chapter 142, which was prospective in its operation, taking effect from the date it was enacted into law, among other things amended Art. 81, § 277 (r), to provide that the recordation tax rate in Prince George's County, absent a resolution or ordinance by the county, should be $1.65 for each $500.00 of consideration or secured debt. Chapter 142 also amended Art. 81, § 277 (q), to make it clear that Baltimore City and all of the counties could by resolution or ordinance fix the recordation tax rate and that the rates

---

2. Subsection (r) of § 277 then provided:

"(r) *Prince George's County* — Notwithstanding the other provisions of this section the County Commissioners of Prince George's County in lieu of the rate of tax provided in subsection (b) above, are authorized by resolution to adopt a rate of tax as follows: In the case of instruments conveying title to property, the tax shall be at the rate of $1.10 for each $500.00 or fractional part thereof of the actual consideration paid or to be paid; and in the case of instruments securing a debt, the tax shall be at the rate of $1.10 for each $500.00 of the principal amount of the debt secured. The tax hereinabove imposed shall be paid to and collected by the treasurer of Prince George's County, and paid over by said treasurer to the County Commissioners."

Prince George's County's position had, in effect, been that subsection (q) of § 277, which was passed at the same legislative session as subsection (r) but was signed into law about one month later, was in conflict with subsection (r) and thus repealed subsection (r) by implication. Subsection (q) provided that counties generally "may by resolution or ordinance" fix the recordation tax rate, and Prince George's County by resolution set the rate at $1.65. We rejected this argument and held that the two subsections could be harmonized, relying on the principles that statutes should be construed in harmony if reasonably possible, that repeals by implication are disfavored, and that statutory language should not be rendered superfluous or meaningless unless such construction were necessary.

Later, in Blumenthal v. Clerk of Cir. Ct., 278 Md. 398, 365 A. 2d 279 (1976), we made it clear that, because of the particular wording of subsection (r) and the legislative history of the two subsections, the holding in Prince George's County v. White, *supra,* was limited to the relationship between subsections (q) and (r), was applicable just to Prince George's County, and that Baltimore City and several other counties could under subsection (q) enact resolutions setting whatever recordation tax rate they deemed appropriate.

specified in various subsections of § 277 applied only in the absence of such local resolution or ordinance.

Chapter 129 of the Acts of 1976, the meaning of which is at the heart of the controversy in the instant case, set forth in § 1 "the legislative intent" that since 1968, when subsection (q) of Art. 81, § 277, became effective, the recordation tax rate fixed by resolution or ordinance of a subdivision superseded the tax rate specified for that subdivision in "any other subsection" of § 277. Section 2 of Ch. 129 "ratified, confirmed, and validated" the authority to collect recordation taxes pursuant to local resolutions or ordinances on or after July 1, 1968. The second paragraph of § 2 went on to state that the section was not intended to apply to actions "which are res judicata" or "whenever constitutionally protected rights would be impaired." [3]

The present litigation was instituted in 1976 when White and Kenland filed a four count declaration in the Circuit Court for Prince George's County.

In Count I, the plaintiffs alleged that on April 30, 1974, they recorded a Deed of Trust among the Prince George's County land records and paid a recordation tax at the rate of $1.65 for every $500.00 of consideration. They asserted that the tax at the $1.65 rate was erroneously assessed and collected, as the maximum tax rate then allowed by law was $1.10 for

---

3. Sections 1 and 2 of Ch. 129 provide in their entirety:

"SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the legislative intent with respect to subsection (q) of Section 277 of Article 81 of the Annotated Code of Maryland is that recordation tax rates fixed from time to time by resolution or ordinance of a county or Baltimore City and which are applicable on or after the date subsection (q) became effective, namely, July 1, 1968, supersede tax rates specified for that political subdivision in any other subsection of Section 277 as of July 1, 1968, or subsequent applicable date of the locally enacted tax rates.

"SECTION 2. AND BE IT FURTHER ENACTED, That authority to collect recordation taxes pursuant to a tax rate fixed from time to time by resolution or ordinance of a county or Baltimore City and applying on or after July 1, 1968, is hereby ratified, confirmed, and validated.

"This Section 2 of the Act is not intended to apply to relevant actions which are res judicata, nor whenever constitutionally protected rights would be impaired."

every $500.00 of consideration. The plaintiffs further stated in Count I that on December 2, 1975, they filed with the Prince George's County Office of Finance a claim for $528.00 partial refund, which amount represented the excess tax paid because of the higher rate. They stated that the Office of Finance has taken no action on the claim for a refund, neither granting or denying it. The plaintiffs acknowledged in Count I that they had not pursued the administrative remedy provided by statute for tax refund claims. Nevertheless, the plaintiffs asserted that, because the facts and issue were identical to those involved in *Prince George's Co. v. White, supra,* except for the particular instrument recorded, and because Prince George's County has refused to make payment in that case in accordance with the decision of the Court of Appeals, they were not required to pursue and exhaust their administrative remedies. The plaintiffs demanded judgment for $528.00, the amount of tax illegally collected on the instrument recorded by them on April 30, 1974.

In Count II of their declaration, the plaintiffs incorporated all of their allegations set forth in Count I, and asserted that the actions of Prince George's County in connection with the tax on the deed recorded on April 30, 1974, deprived the plaintiffs of their property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Articles 14, 19 and 23 of the Maryland Declaration of Rights. Furthermore, in both Count I and Count II, the plaintiffs claimed to be suing on behalf of all other persons similarly situated, and demanded judgment in the additional amount of $10,000,000.00 on behalf of such class of persons.

Counts III and IV of the declaration related to the very same deeds and recordation taxes involved in *Prince George's County v. White, supra, i.e.,* the deeds recorded on December 20, 1971, and October 11, 1972. In those counts, the plaintiffs recited the history of *Prince George's Co. v. White, supra,* and reiterated that Prince George's County had refused to pay the amount of the refund which the Tax Court and this Court determined in *White* was due them. In the *White* case, the Tax

Court had ordered that the plaintiffs "be entitled to a partial refund" in recording taxes, totaling $2,953.75. In Counts III and IV of the declaration in the instant case, the plaintiffs sought to reduce the order of the Tax Court, affirmed by this Court in the *White* case, to judgment.

Thereafter, the plaintiffs White and Kenland moved for summary judgment and the defendant Prince George's County filed a demurrer to the declaration. On June 30, 1976, the circuit court (Bowie, J.) filed an opinion sustaining, without leave to amend, the demurrer to Counts I and II on the ground that the plaintiffs had failed to follow the administrative and judicial remedies provided by statute for the refund of recordation taxes. The circuit court overruled, as lacking merit, Prince George's County's demurrer to Counts III and IV. Following Prince George's County's pleas to the declaration and to the motion for summary judgment, the circuit court (Blackwell, J.) filed another opinion, granting the plaintiffs' motion for summary judgment with respect to Counts III and IV.

The plaintiffs took an appeal to the Court of Special Appeals from the circuit court's order sustaining the demurrer to Counts I and II, and Prince George's County filed a cross-appeal from the summary judgment in favor of the plaintiffs on Counts III and IV. Before any further proceedings in the Court of Special Appeals, this Court granted Prince George's County's petition for a writ of certiorari. For the reasons which follow, we uphold the rulings of the circuit court.

(1)

*Counts I and II — The Plaintiffs' Appeal*

The Maryland Legislature has in Art. 81 of the Code, §§ 213-219, provided a comprehensive remedial scheme for the refund of taxes erroneously paid. Under § 215, if anyone erroneously or mistakenly pays to a state, county or municipal agency more for special taxes than was properly and legally payable, he is authorized to file a written claim for a refund and is entitled to a hearing. Section 216 provides

for the allowance or disallowance of the claim by the government entity involved after investigation and hearing. If a claim is disallowed, or if it is not acted upon within six months from the date of filing, § 217 sets forth the administrative remedy of an appeal to the Maryland Tax Court, together with judicial review of the Tax Court's decision:

> "§ 217. Same — Appeals.
>
> "The person filing a claim for refund shall be entitled to appeal from any final action taken under the provisions of § 216 of this subtitle in disallowing any claim for refund, in whole or in part, to the Maryland Tax Court, and from the action of the Maryland Tax Court may appeal to the courts of this State, in the same manner as appeals are permitted from any other action of the Maryland Tax Court under the provisions of this article. If a claim for refund is neither allowed nor disallowed within 6 months from the date of filing of the claim, the claim may be deemed by the person filing it to have been finally disallowed and such person may file an appeal to the Maryland Tax Court under this section."

This statutory remedy "applies to 'any' special tax without regard to the statute imposing it," including a recordation tax, *Latrobe v. Comptroller,* 232 Md. 64, 70, 192 A. 2d 101 (1963). *See also Tax Comm. v. Power Company,* 182 Md. 111, 32 A. 2d 382 (1943). The plaintiffs in the instant case could have pursued the administrative remedy prescribed by these statutory provisions when their refund claims were not acted upon after six months from the time of filing.[4] However, the plaintiffs attempt to excuse their failure to pursue the statutory remedy by arguing that the Legislature did not

---

4. Before June 1, 1971, the provisions relating to the refund of *special* taxes (as distinguished from *ordinary* taxes) encompassed only those erroneously paid to a state agency and did not extend to special taxes erroneously paid to political subdivisions. *See* Rapley v. Montgomery County, 261 Md. 98, 110, 274 A. 2d 124 (1971). By Ch. 644 of the Acts of 1971, the General Assembly broadened the statutory scheme to include special taxes paid to counties and municipalities.

intend that remedy to be exclusive. They also assert that the statutory remedy is expensive, cumbersome, burdensome and inadequate.

Where there exists a special statutory remedy for the resolution of a particular matter, as well as an ordinary action at law or in equity, whether the special statutory remedy is exclusive, and preempts resort to the ordinary civil action, is basically a question of legislative intent. *Maryland-National Capital Park and Planning Commission v. Washington National Arena*, 282 Md. 588, 595-596, 386 A. 2d 1216 (1978); *Reiling v. Comptroller*, 201 Md. 384, 387-389, 94 A. 2d 261 (1953); *Wasena Housing Corp. v. Levay*, 188 Md. 383, 391, 52 A. 2d 903 (1947); *Tawes, Comptroller v. Williams*, 179 Md. 224, 228, 17 A. 2d 137, 132 A.L.R. 1105 (1941). In ascertaining that intent, it is a settled principle of statutory construction that, absent a legislative indication to the contrary, it will usually be deemed that the Legislature intended the special statutory remedy to be exclusive. *State Dept. of A. & Tax. v. Clark*, 281 Md. 385, 401, 380 A. 2d 28 (1977); *DuBois v. City of College Park*, 280 Md. 525, 533, 375 A. 2d 1098 (1977); *Soley v. St. Comm'n On Human Rel.*, 277 Md. 521, 526, 356 A. 2d 254 (1976); *Agrarian, Inc. v. Zoning Inspector*, 262 Md. 329, 332, 277 A. 2d 591 (1971). Moreover, where the special statutory scheme for relief is exclusive and includes administrative proceedings and provisions for judicial review of the administrative decision, one must normally exhaust the administrative remedy before recourse to the courts under the judicial review provisions. *Soley v. St. Comm'n On Human Rel., supra; Leatherbury v. Gaylord Fuel Corp.*, 276 Md. 367, 373-376, 347 A. 2d 826 (1975), and cases there cited.[5]

In light of these principles, this Court has generally viewed special statutory remedies for the determination of tax questions to be exclusive. *E.g., State Dept. of A. & Tax. v. Clark, supra*, 281 Md. at 401-403; *Tanner v. McKeldin*, 202 Md. 569, 578, 97 A. 2d 449 (1953); *Reiling v. Comptroller, supra*,

---

5. For a recent and more detailed discussion of these and related principles, *see* Judge Levine's opinion for the Court in Maryland-National Capital Park and Planning Commission v. Washington National Arena, 282 Md. 588, 386 A. 2d 1216 (1978).

201 Md. at 387-389; *Wasena Housing Corp. v. Levay, supra,* 188 Md. at 391; *Tawes, Comptroller v. Williams, supra,* 179 Md. at 228; *Oil Co. v. Anne Arundel Co.,* 168 Md. 495, 178 A. 221 (1935); *Steam Packet Co. v. Baltimore,* 161 Md. 9, 155 A. 158 (1931); *Schluderberg Etc. Co. v. Baltimore,* 151 Md. 603, 613-615, 135 A. 412 (1926). But there are exceptions, and in some situations this Court has held that statutory remedies for the resolution of tax matters are not exclusive. *See State Dept. of A. & Tax. v. Clark, supra,* 281 Md. at 403-405; *Pressman v. State Tax Commission,* 204 Md. 78, 83-84, 102 A. 2d 821 (1954); *Baltimore v. Gibbs,* 166 Md. 364, 171 A. 37 (1934). *Cf. Poe v. Baltimore City,* 241 Md. 303, 308-315, 216 A. 2d 707 (1966). The plaintiffs urge that the present case is one of those "exceptional" ones where the statutory remedy should not be deemed exclusive.

However, there is a fundamental difference between the present case and the cases where a particular remedy provided by statute was not treated as exclusive. In those "exceptional" cases, a recognized alternate remedy under either common law principles or under some other statute had been invoked. For example, in *Pressman v. State Tax Commission, supra,* the Court held that the plaintiffs were entitled to bring a declaratory judgment action as an alternative to the special remedy provided by the tax code. In other types of cases, a bill in equity could be brought as an alternative to the statutory remedy. *See* the review of such cases in *Poe v. Baltimore City, supra,* 241 Md. at 308-315. In other words, the question of whether the Legislature intended a particular statutory remedy to be exclusive only arises where the claimant is pursuing a possible alternate remedy. Where the type of action which the plaintiff is attempting to bring as an alternative to the special statutory remedy simply does not lie, logically no question of exclusiveness arises. In such a situation, it does not matter if the special statutory remedy is deemed inadequate or if some other exception to the general rule is present.[6] If the

---

6. Of course, we do not intend to intimate that the statutory remedy involved in this case is inadequate or that some other exceptional circumstance exists. We do not reach these matters in this case.

only remedy presently available to a plaintiff is the special statutory remedy, that remedy obviously must be followed. And with respect to the instant case, it is firmly established in Maryland that a common law action will not lie to recover taxes erroneously paid under a mistake of law.

More than one hundred and thirty years ago, in *M. & C. C. of Balt. v. Lefferman,* 4 Gill. 425, 430-431 (1846), this Court, although holding unconstitutional the statute under which Baltimore City had required the plaintiff to expend a certain sum of money, went on to reverse a judgment in favor of the plaintiff and against the City for that sum of money on the ground that money demanded and voluntarily paid "cannot be recovered back in a Court of law, upon the ground that the payment was made under a misapprehension of the legal rights and obligations of the party." A year later, in *Morris v. Mayor & C. C. of Balt.,* 5 Gill. 244, 248 (1847), the Court reaffirmed *Lefferman,* holding that an action in assumpsit to recover taxes paid could not be maintained "even if we had considered the tax as unconstitutional and void." Subsequently, in *Lester v. Mayor and City Council of Baltimore,* 29 Md. 415 (1868), the plaintiff brought an action in assumpsit to recover tax money, alleging that he paid a certain tax to Baltimore City only to prevent the compulsory sale of his property by the City and that the Court of Appeals thereafter decided that the particular tax was illegally assessed. This Court affirmed a judgment in favor of the City, citing *Lefferman* and *Morris,* and stating in an opinion by Judge Alvey (29 Md. at 418-419, emphasis in original):

> "No principle is better settled than that where a person, with full knowledge of the *facts, voluntarily* pays a demand unjustly made upon him, though attempted or threatened to be enforced by proceedings, as appears to have been the case in this instance, it will not be considered as paid by compulsion, and the party thus paying, is not entitled to recover, though he may have protested against the unfounded claim at the time of payment made. . . .

"There is no pretense here that the money sued for was paid under mistake of the facts, or under circumstances of fraud and extortion; nor is this a case where money has been paid as a necessary means to obtain the possession of goods wrongfully withheld from the party paying the money .... In such cases, an action may be maintained for the money wrongfully exacted. But it is the naked case of a party making payment of a demand rather than resort to litigation, and under the supposition that the claim, which subsequently turned out to be unauthorized by law, was enforceable against him or his property."

These holdings have been reaffirmed in an unbroken line of cases. In point is *Wasena Housing Corp. v. Levay, supra,* 188 Md. 383, where a taxpayer brought an action at law to recover taxes erroneously paid, and this Court, in affirming a judgment in favor of the defendant government officials, stated that "[a]ll refunds of State taxes are matters of grace with the Legislature" (188 Md. at 389) and that the statutory remedies were "exclusive in this type of case." (*Id.* at 394.) The Court in *Wasena* pointed out that recovery could not be had on the theory that the tax officials made a "mistake of fact," as "[a]t common law recovery of money paid under a mistake of fact is limited to money paid or received under a mistake [of fact] on the plaintiff's part, or a mutual mistake [of fact] . . ." (*id.* at 387). The Court also repeated the holding of the *Lester* case that "payment under protest, under threat and advertisement of sale, is a voluntary payment . . ." (*id.* at 388).

Recently, in *Rapley v. Montgomery County,* 261 Md. 98, 274 A. 2d 124 (1971), the plaintiffs paid a Montgomery County transfer tax under protest, and then brought an action in the circuit court for a refund of the tax, a declaratory judgment, and an injunction, claiming that the tax was unconstitutional. At the time, the plaintiffs had no remedy under the tax code, as Art. 81, §§ 215-217, applied only to special taxes paid to the State and did not encompass those paid to political subdivisions. In affirming a judgment for Montgomery

County, the Court in an opinion by Judge Singley, after extensively reviewing the history of the common law rule relating to tax refund actions and the special statutory provisions for relief that have been enacted from time to time, concluded (261 Md. at 110-111):

> "In sum, the appellants have run the full circle, and since they cannot avail themselves of the Act of 1929 and its progeny, are back to where they would have been had the Acts of 1807, 1852 and 1929 never been passed: they have collided head on with the common law rule, as interpreted by our prior decisions, which precludes the recovery of taxes paid voluntarily under a mistake of law, even if paid under protest and even if the statute under which the tax was paid is later determined to be unconstitutional or invalid. . . .

> \* \* \*

> "Since no statute afforded the appellants the relief they sought and because there was no right at common law under our prior decisions to recover money voluntarily paid under a mistake of law, the result reached by the lower court must be upheld."

*See also Baltimore County v. Churchill, Ltd.,* 271 Md. 1, 14, 313 A. 2d 829 (1974); *Comptroller v. Campanella,* 265 Md. 478, 487, 290 A. 2d 475 (1972); *Helser v. State,* 128 Md. 228, 231, 97 A. 539 (1916); *Baltimore v. Harvey,* 118 Md. 275, 84 A. 487 (1912); *Monticello Co. v. Balt. City,* 90 Md. 416, 432-433, 45 A. 210 (1900); *Mayor, &c. of Baltimore v. Hussey,* 67 Md. 112, 9 A. 19 (1887).

Since an ordinary civil action does not lie in Maryland for the recovery of taxes voluntarily paid under a mistake of law, the circuit court correctly sustained the demurrer to Counts I and II of the declaration.[7] The plaintiffs' proper remedy, if

---

7. There is a circumstance under which our cases have held that a common law action in assumpsit is available to recover taxes voluntarily paid under a mistake of law. Where a statute changed the common law rule and provided that the taxpayer was entitled to a refund but did not contain a special statutory remedy, this Court took the position that an action in assumpsit

they are entitled to relief, is through the statutory procedure set out in Art. 81, §§ 215-217, for the recovery of special taxes erroneously paid. Consequently, we do not reach the other questions which have been raised in connection with Counts I and II of the declaration, such as the right to bring a class action for the refund of taxes,[8] whether Ch. 129 of the Acts of 1976 applies to the claims asserted in Counts I and II, and, if it does apply, the constitutional issues presented by such application of the statute. All of these questions are matters to be resolved in the special statutory administrative and judicial review proceedings.

## (2)

### *Counts III and IV—The Defendant's Appeal*

The claims for refund of recordation taxes which are the subject of Counts III and IV of the plaintiffs' declaration are in an entirely different posture from those which we have just considered. Counts III and IV involve the same recordation tax claims which were adjudicated in *Prince George's County v. White, supra,* 275 Md. 314. As to them, the plaintiffs did pursue and exhaust the statutory remedy set forth in Art. 81, §§ 215-217. They prevailed in the Tax Court and, upon judicial review, in this Court. Under §§ 215-217, therefore, they were entitled to refunds, but Prince George's County refused to comply with the Tax Court order which was affirmed by this Court. Under such circumstances, an action in assumpsit against the County for the money due ordinarily would lie. *Cf. George's Creek Coal & Iron Co. v. County Comm'rs of Allegany Co.,* 59 Md. 255, 260-261 (1883).

Moreover, Ch. 129 of the Acts of 1976, enacted to change the holding in *Prince George's County v. White, supra,* and

could be maintained. George's Creek Coal & Iron Co. v. County Comm'rs of Allegany Co., 59 Md. 255, 260-261 (1883). *See also* Baltimore v. Finance Corp., 168 Md. 13, 176 A. 480 (1935); Baltimore v. Home Credit Co., 165 Md. 57, 65, 166 A. 604 (1933). These cases do not help the plaintiffs in the present case, as the only statutory provisions applicable under the facts here and which modify the common law rule, §§ 215-217 of Art. 81, set forth a remedy and specify the type of judicial action which must first be brought, namely an action for judicial review of the decision of the Tax Court.

8. As to class actions in tax refund proceedings, *see* Hooks v. Comptroller, 265 Md. 380, 383, 289 A. 2d 332 (1972).

purporting to have some degree of retroactive effect, would seem to confirm the plaintiffs' entitlement to refunds with respect to these claims. Although providing· in the first paragraph of § 2 of Ch. 129 that a county's authority to collect recordation taxes after 1968 at a rate fixed by resolution or ordinance of the county is "ratified, confirmed, and validated," it was stated in the second paragraph of § 2 that "[t]his Section 2 . . . is not intended to apply to relevant actions which are res judicata . . . ." Thus, it would appear that the second paragraph of Ch. 129, § 2, encompassed the claims involved in the *White* case.

Prince George's County's arguments as to why the plaintiffs are not entitled to refunds are based upon a case decided by this Court almost three months after *White.* As previously noted, *supra,* n. 1, *Prince George's County v. White,* decided on June 26, 1975, was a direct appeal from the Maryland Tax Court to this Court pursuant to the statutory provisions then in effect, Ch. 385 of the Acts of 1971. However, in *Shell Oil Co. v. Supervisor,* 276 Md. 36, 343 A. 2d 521 (1975), decided September 9, 1975, we held that Ch. 385 of the Acts of 1971 was unconstitutional because it conferred original jurisdiction on this Court, and that under the Maryland Constitution only appellate jurisdiction could properly be conferred on this Court or on the Court of Special Appeals. We further held in *Shell* that initial judicial review of Tax Court decisions should be in the circuit courts, and we transferred all tax appeals then on our docket to the appropriate circuit courts. Of course, *Prince George's County v. White, supra,* having been decided by this Court almost three months earlier, was no longer on our docket.

According to Prince George's County, because of the later holding in *Shell,* the statute under which we entertained the direct appeal in *Prince George's County v. White* was unconstitutional. Relying on the doctrine of *Norton v. Shelby County,* 118 U. S. 425, 442, 6 S. Ct. 1121, 1125, 30 L. Ed. 178 (1886), that "[a]n unconstitutional act is not a law; it confers no rights; . . . it is, in legal contemplation, as inoperative as though it had never been passed," Prince George's County argues that the statute by which we heard the appeal in *White*

was an absolute nullity and that we therefore had no jurisdiction to decide *White.* Invoking the principle that where an appellate court lacks jurisdiction, any expression in its opinion on the merits of the appeal is only dicta, *Eastgate Associates v. Apper,* 276 Md. 698, 704, 350 A. 2d 661 (1976), the County contends that everything in *White* is mere dicta and is in no way binding on the parties or on us. The County then argues that we should now reconsider the statutory interpretation issue resolved in *White,* and that we should overrule the *White* interpretation of the statutory provisions then in effect concerning the recordation tax rate in Prince George's County. Under the correct interpretation of those statutory provisions, according to the County, the proper rate was then $1.65, and the plaintiffs were not entitled to refunds.

Moreover, as an alternative argument, Prince George's County appears to contend that Ch. 129 of the Acts of 1976 overrules *White* with respect to the very claims involved in *White.* As to the language in Ch. 129 making the retroactive provision inapplicable to "actions which are res judicata," Prince George's County contends that the *White* case is not res judicata. The County's theory seems to be that our decision in *White* cannot be res judicata because we had no jurisdiction to entertain the appeal, and the Tax Court's decision in *White* cannot be res judicata because the Tax Court is an administrative agency and not a "court" in the constitutional sense. The County further argues that making the retroactive provision of Ch. 129 applicable to the claims involved in *White* is fully constitutional.

Although Prince George's County's arguments are intriguing, we reject the County's position. Preliminarily, it should be pointed out that the strict void ab initio doctrine of *Norton v. Shelby County, supra,* has in recent years been rejected in many different circumstances, and judicial declarations of unconstitutionality do not always result in statutes being treated as nullities for all purposes. For a comprehensive discussion of this retreat from the *Norton* case, *see* Judge Digges's opinion for the Court in *Perkins v. Eskridge,* 278 Md. 619, 627-637, 366 A. 2d 21 (1976). *See also, e.g., Lemon v. Kurtzman,* 411 U. S. 192, 93 S. Ct. 1463, 36

L.Ed.2d 151 (1973); *Linkletter v. Walker,* 381 U. S. 618, 623, 85 S. Ct. 1731, 1734, 14 L.Ed.2d 601 (1965); *Slate v. Zitomer,* 275 Md. 534, 538 n. 2, 341 A. 2d 789, 792 (1975), *cert. denied, sub nom Gasperich v. Church,* 423 U. S. 1076, 96 S. Ct. 862, 47 L.Ed.2d 87 (1976). Moreover, in the *Shell* case itself, we gave some effect to the very statute which we declared unconstitutional, for we stated (276 Md. at 49-50):

> "Our holding that the Constitution does not allow us to review directly Tax Court decisions does not under the peculiar circumstances here require that the case be dismissed. Shell properly sought judicial review under the statutory provisions and rules which, prior to our decision today, governed such judicial review. Consequently, we believe that the appropriate action would be to transfer the case, including the complete record and briefs filed in this Court, to the Circuit Court for Prince George's County for expeditious judicial review by that court of the Tax Court's decision. Other cases pending on our docket in the same posture will also be transferred to the appropriate trial courts, and we assume that the Court of Special Appeals will do likewise."

However, it is not necessary in this case for us to determine precisely the effect of the *Shell* case upon the earlier *White* case. Regardless of whether the resolution of the statutory interpretation question in *White* is a "holding" and res judicata or is mere dicta as argued by Prince George's County, we decline to retreat from it. After the decisions in both *White* and *Shell,* we reaffirmed *White* with respect to the statutory provisions governing the recordation tax rate in Prince George's County, and we distinguished those provisions from the sections applicable to Baltimore City and other counties. *Blumenthal v. Clerk of Cir. Ct.,* 278 Md. 398, 365 A. 2d 279 (1976). Moreover, the Legislature enacted Chs. 129 and 142 of the Acts of 1976 in light of the *White* case. Although we entertain no doubts about the correctness of *White* in light of the statutory provisions then existing, even

if we did it would be inappropriate under the circumstances to depart from the principle of stare decisis and overrule *White* at this time. *Cf. Flood v. Kuhn,* 407 U. S. 258, 92 S. Ct. 2099, 32 L.Ed.2d 728 (1972).

With regard to § 2 of Ch. 129 of the Acts of 1976, making the retroactive change in the recordation tax rates inapplicable to "actions which are res judicata," we disagree with Prince George's County's argument that the *White* case is not res judicata. Even assuming arguendo that our decision in that case does not have res judicata effect because of *Shell Oil Co. v. Supervisor, supra,* the Tax Court's decision in *White* in favor of the plaintiffs would be res judicata. Although early cases often made the sweeping statement that decisions of administrative agencies can never be res judicata, this Court later came to recognize that the principles of public policy underlying the rule of res judicata were applicable to some administrative agencies performing quasi judicial functions. See Judge Hammond's discussion and review for the Court in *Woodlawn Ass'n v. Board,* 241 Md. 187, 194-196, 216 A. 2d 149 (1966).

The Tax Court is an administrative agency performing a quasi judicial function, as opposed to a court performing a judicial function, because of the limitations in the Maryland Constitution concerning the establishment of courts and the performance of judicial functions. *Shell Oil Co. v. Supervisor, supra.* Nevertheless, under the provisions of Art. 81, §§ 224-231, it functions in many respects as a court. Among other things, the Tax Court has the power to issue subpoenas to compel the attendance of witnesses and the production of documents (§ 231); it is directed to conduct its proceedings "in a manner similar to proceedings in courts of equity in this State" (§ 229 (c)); and its "order is final and conclusive" unless an appeal to the courts is taken (§ 229 (i)). Particularly in light of this latter provision, we believe that the decisions of the Tax Court have res judicata effect.

Furthermore, and apart from whether our decision or the Tax Court's decision in *White* were technically res judicata because of *Shell,* the real question is the intent of the Legislature in providing in Ch. 129 that § 2 of that Act does

not "apply to relevant actions which are res judicata . . . ." The "cardinal rule of statutory construction is to ascertain and carry out the real legislative intent," *St. Paul Fire & Mar. v. Ins. Comm'r,* 275 Md. 130, 139, 339 A. 2d 291 (1975), and cases there cited. Nothing in the statute suggests that the General Assembly intended to distinguish between tax cases occurring after *Shell,* where initial judicial review of Tax Court decisions was sought in the circuit courts, and tax cases before *Shell,* where judicial review was initially in this Court, or tax cases where no further review of the Tax Court's judgment was sought. For the Legislature to have intended to draw these lines of distinction would have been unusual, and it certainly should not be presumed absent language clearly indicating such a purpose. In our view, the obvious legislative purpose of the language concerning actions which were res judicata was to exempt from the retroactive section all of those recordation tax cases which had been finally decided either by the Tax Court or by constitutional courts on review of the Tax Court decisions.

Consequently, the plaintiffs were entitled to judgment on Counts III and IV.

*Judgment affirmed.*
*Costs to be equally divided.*