521 A.2d 1251

McLEAN CONTRACTING COMPANY

v.

MARYLAND TRANSPORTATION AUTHORITY.

No. 797, Sept. Term, 1986.

Court of Special Appeals of Maryland.

March 6, 1987.

William M. Huddles (Herman M. Braude, John R. Heisse, II and Braude, Margulies, Sacks & Rephan, Chartered, on brief), Baltimore, for appellant.

William A. Kahn, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Lawrence G. Rosenthal, Asst. Atty. Gen., on brief), Baltimore, for appellee.

Argued before WEANT, ALPERT and ROSALYN B. BELL, JJ.

ALPERT, Judge.

At Walnut Point, just below Curtis Bay, the Baltimore Beltway (U.S. Route 695) crosses Curtis Creek at a drawbridge linking Anne Arundel County to Baltimore City. In April, 1980, appellee, the Maryland Transportation Authority (MTA), an agency within the Maryland Department of Transportation (DOT), entered into a contract with appellant, McLean Contracting Company (McLean) to construct a second drawbridge at that site.

On October 14, 1982, two months before completing the bridge, McLean submitted a claim for additional compensation under the "equitable adjustment" provision of its contract. This claim was submitted to MTA pursuant to procedures outlined in the contract's "Disputes" clause. McLean asserted that it had incurred additional expense in constructing the drawbridge due to delays caused by MTA and/or its agents.

Mr. John A. Moeller, MTA's procurement officer, issued a final decision denying McLean's claim on May 6, 1985. One month later, McLean filed an action in the Circuit Court for Anne Arundel County alleging that MTA breached the April, 1980 contract. McLean's suit was not an appeal from MTA's May 6th decision but a wholly new action, *ex contractu*, directed to the court's general, primary jurisdiction.

After filing its answer, MTA moved to dismiss the action on the basis that the court lacked subject matter jurisdiction to resolve the dispute. MTA argued that McLean was

required to take an appeal to the Maryland State Board of Contract Appeals (MSCBA) before the circuit court could review the dispute.

In a well-reasoned and concise opinion, Judge Martin A. Wolff held that McLean had indeed failed to exhaust necessary administrative remedies. For that reason, the court dismissed McLean's suit for lack of subject matter jurisdiction. McLean filed this appeal.

In resolving McLean's appeal, we are called to answer a narrow question:

> Is the Maryland State Board of Contract Appeals vested with exclusive subject matter jurisdiction to review final agency action in disputes filed after July 1, 1981 involving Maryland Department of Transportation procurement contracts entered into between July 1, 1978 and July 1, 1981.

We are convinced that an appeal to the MSBCA is a statutorily mandated prerequisite to circuit court jurisdiction over disputes involving these contracts. Therefore, we shall affirm the decision of the circuit court.

### Legislative History

Between 1976 and 1981, the Maryland General Assembly was quite active in creating and changing procedures for resolving disputes related to DOT procurement contracts. The forum in which a contractor was required to resolve such a dispute changed three times during those five years. We shall summarize relevant legislature history.

a. *Department of Transportation Board of Contract Appeals*

Before 1976, the doctrine of sovereign immunity precluded contractors from suing the Maryland Department of Transportation in the circuit courts of this State. By Chapter 450, Laws of Maryland, 1976, the General Assembly enacted a limited waiver of immunity, thereby allowing contractors, on authorized State contracts, to bring an ac-

tion against the State in those courts.[1] Two years later, the General Assembly enacted Chapter 418, Laws of Maryland, 1978 (hereinafter, Chapter 418), codified at Md.Transp.Code Ann. §§ 2–601 through 2–604 (1979 Supp.). This legislation established the Department of Transportation Board of Contract Appeals (DOTBCA) within the DOT and gave the DOTBCA "jurisdiction over all disputes other than labor disputes arising under a contract with the Department, or as a result of a breach of a contract with the Department." 1978 Maryland Laws, ch. 418, § 1. Chapter 418 and its dispute resolution procedures were to be construed prospectively and were not to be applied to any contract entered into before the effective date of the legislation. 1978, Maryland Laws, ch. 418, § 3. Parties to a pre-existing contract, however, could make their agreement subject to those procedures. *Maryland Port Administration v. C.J. Langenfelder and Son, Inc.,* 50 Md.App. 525, 530 n. 4, 438 A.2d 1374 (1982). Thus, the circuit courts were divested of part of their recently acquired original jurisdiction over disputes involving DOT contracts.

b. *Maryland State Board of Contract Appeals*

In 1980, the General Assembly enacted a comprehensive procurement contract code. With the passage of Chapter 775, Laws of Maryland, 1980 (hereinafter, Chapter 775), provisions governing State procurement of supplies, services and construction were repealed and reenacted under a single code Article. The provisions of Chapter 775 included a contract dispute resolution mechanism. The General Assembly put this mechanism in place through a series of legislative maneuvers:

> (1) it abolished the Department of Transportation Board of Contract Appeals and created the Maryland State

---

1. This waiver was codified initially at Art. 41, § 10A Md.Ann.Code, subsequently at Art. 21, §§ 7–101, *et seq.* and presently at Md.State Gov't Code Ann. § 12–201 *et seq.* (1986 Cum.Supp.).

Board of Contract Appeals, 1980, Maryland Laws, Ch. 775, § 9;

(2) it gave the newly created MSBCA jurisdiction to hear and decide any appeal taken from a final action by an agency disapproving a settlement or approving a decision not to settle any dispute involving a State procurement contract, *Id;*

(3) it transfered all appeals pending before the DOTBCA as of the effective date of the Act (July 1, 1981) to the MSBCA, *Id.*, § 22.

Chapter 775 went on to provide that, although existing obligations or contractual rights could not be impaired by the law, its procedural provisions, including those requiring review by the MSBCA, could, at the contractor's option, be applied to contracts in force on the effective date of such provisions. *Id.*, § 25.

As eventually and presently codified at Subtitle 2 of Title 17, Division II of the State Finance and Procurement Article, Chapter 775 created a four-step procedure for resolving procurement contract disputes.[2] First, the contractor submits its dispute to the agency procurement officer who may "negotiate and resolve" it. Md.State Fin. & Proc.Code Ann. § 17–201(a) (1985). Second, an agency head reviews and approves or disapproves the procurement officer's decision. *Id.* § 17–201(c) and (d). Third, the decision of the reviewing authority under step two may be appealed to the MSBCA. *Id.* § 17–201(e). Four, the decision of the MSBCA under step three is subject to review in accordance with the Administrative Procedure Act. *Id.* § 17–203.

### *The Timing Of McLean's Contractual Dispute*

The McLean contract was entered into before the adoption of chapter 775 and, therefore, the procedural require-

---

**2.** For present purposes, our review of the 4–step contract resolution process is limited to disputes relating to contracts which have been entered into by the State and does not include certain provisions governing disputes relating to contract formation.

ments of chapter 418 were included in the agreement's "Disputes" clause.[3] Under that clause, the appropriate DOT Administrator decides any dispute not disposed of by a DOT engineer. Consistent with Section 1 of Chapter 418, the McLean contract provides that appeals from the Administrator's decisions must be taken to the DOTBCA. There's the rub. When the Administrator issued his decision to McLean, the DOTBCA no longer existed, having been abolished by Chapter 775. Further, because McLean's dispute was not docketed with the DOTBCA on the effective date of chapter 775, the dispute did not automatically transfer to the newly created MSBCA. Rather than filing an appeal with the MSBCA, clearly an option available to it, McLean started over again in the circuit court.

### Our Analysis

When an administrative remedy is provided by statute, relief generally must be sought initially from the appropriate administrative agency, and that relief must be exhausted before a party may resort to the courts. *Md. Comm'n*

---

3. The "Disputes" clause of the agreement provides:
   *GP–5.15 Disputes*
   All disputes arising under or as a result of a breach of this Contract which are not disposed of by agreement between the Contractor and Engineer shall be decided by the Administrator or his duly authorized representative who shall reduce his decision to writing and mail by certified or registered mail or otherwise deliver a copy thereof to the Contractor. Any such decision shall be final and conclusive unless within thirty (30) days of receipt of same the Contractor mails or otherwise furnishes a written appeal to the Department of Transportation Board of Contract Appeals. Pending any decision by the Board of Contract Appeals of a dispute hereunder, the Contractor shall proceed diligently with the performance of the Contract and in accordance with the decision of the Administrator or his duly authorized representative.
   The custom of submitting contractual disputes to DOT Administrators developed before the adoption of Chapter 418 and was retained thereafter as part of regulations enacted pursuant to that law. *See* Md.Regs.Code (COMAR) Title 11 § 06 (1980). As mandated by Chapter 418, the McLean "Disputes" clause also provides that appeals from the Administrator's decision are to be taken to the Department Board of Contract Appeals rather than to the circuit court.

*on Human Rel. v. Bethlehem Steel Corp.*, 295 Md. 586, 592–93, 457 A.2d 1146 (1983); *Berwyn Heights v. Rogers*, 228 Md. 271, 274, 179 A.2d 712 (1962). If a statutory method of appeal from the decision of an administrative agency, including an appeal to a higher administrative forum, is provided, that procedure must generally be followed. *See Berwyn Heights; Comm'rs of Cambridge v. Eastern Shore Pub. Service Co.*, 192 Md. 333, 64 A.2d 151 (1949). The rule that a party must pursue his remedy in the proper administrative forum has been succinctly stated:

> [A] claimant ordinarily must seek to redress the wrong of which he complains by using the statutory procedure the legislature has established for that kind of case, if it is adequate and available, and that if he is unsuccessful and wishes aid from the courts, he must take judicial appeals in the manner the legislature has specified rather than by seeking to invoke the ordinary general jurisdiction of the courts.... [Consequently, we] have consistently held that where a special form of remedy is provided, the litigant must adopt that form and must not bypass the administrative body or official, by pursuing other remedies.

*Prince George's County v. Blumberg*, 288 Md. 275, 283–84, 418 A.2d 1155 (1980), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981), quoting, *Agrarian, Inc. v. Zoning Insp.*, 262 Md. 329, 332, 277 A.2d 591 (1971). Whether the administrative procedure constitutes a claimant's exclusive remedy is, in turn, a matter of legislative intent:

> [w]here there exists a special statutory remedy for the resolution of a particular matter, as well as an ordinary action at law or in equity, whether the special statutory remedy is exclusive, and preempts resort to the ordinary civil action, is basically a question of legislative intent. In ascertaining that intent, it is a settled principle of statutory construction that, absent a legislative indication to the contrary, it will usually be deemed that the Legislature intended the special statutory remedy to be exclu-

sive. Moreover, where the special statutory scheme for relief is exclusive and includes administrative proceedings and provisions for judicial review of the administrative decision, one must normally exhaust the administrative remedy before recourse to the courts under the judicial review provisions.

*White v. Prince George's County,* 282 Md. 641, 649, 387 A.2d 260 (1978) (citations omitted). Even in those cases in which the administrative remedy is not exclusive, a court may refuse to exercise its concurrent jurisdiction pursuant to the doctrine of primary jurisdiction. *Md. Nat'l Capital Park and Planning Comm. v. Wash. Nat'l Arena,* 282 Md. 588, 601–602, 386 A.2d 1216 (1978). As the Court of Appeals said:

> [Primary jurisdiction] is not concerned with subject matter jurisdiction or the competence of a court to adjudicate, but rather is predicated upon policies of judicial restraint: "which portion of the dispute-settling apparatus—the courts or the agencies—should, in the interests of judicial administration, first take the jurisdiction that both the agency and the court have."

*Id.* at 601, 386 A.2d 1216 (citations omitted). The "principal reason" behind this doctrine is the recognition that the work of agencies and courts must be sensibly coordinated. Davis, *Administrative Law Text,* Ch. 19.01 at 374 (3rd ed., 1972). Therefore, courts generally will refuse to act on matters within an agency's particular expertise without the benefit of the agency's opinion. Primary jurisdiction is an issue, however, only when a court and an agency have concurrent jurisdiction over the matter and no statutory provision coordinates the work of the court with that of the agency. *Md. Nat'l Capital Park,* 282 Md. at 601, 386 A.2d 1216.

We continue this discussion by restating the rule that, absent a legislative indication to the contrary, it will usually be deemed that the Legislature intended a special statutory remedy for the resolution of a particular matter to be exclusive. *White,* 282 Md. at 649, 387 A.2d 260.

In the case *sub judice*, McLean asserts that § 25 of Chapter 775 is such a legislative indication. Section 25 provides:

[t]hat although a presently existing obligation or contract right may not be impaired in any way by this Act, the procedural provisions of this Act, including those requiring review by the Maryland State Board of Contract Appeals, may, at the option of the contractor, apply to contracts in force on the effective date of such provisions.[4]

McLean argues that, in making review by the MSBCA optional for contracts in force on July 1, 1981, the Legislature indicated that such a review was merely an "alternative remedy" in disputes involving those contracts.

McLean's characterization of MSBCA procedures as an alternative remedy would be accurate if McLean had some other remedy available to it. Section 25 clearly preserves whatever dispute resolution procedures contracts entered into before July 1, 1981 contain. McLean argues that with the demise of the DOTBCA, its other remedy became that which existed before the DOTBCA was created: the right to sue the DOT directly in the circuit court. We do not agree. The demise of the DOTBCA left McLean with no remedy other than the MSBCA procedures. We explain.

When created, the MSBCA was given jurisdiction to hear and to decide all appeals from a final agency action approving a procurement officer's decision not to settle a procurement contract dispute. 1980, Maryland Laws, Ch. 775, § 9. The Legislature placed no limitation on this jurisdiction related to the formation date of the contract or to the filing date of the dispute. Indeed, in chapter 775, that body defined the term "contract" as *"every* agreement entered into by a State agency for the procurement of supplies, services, construction or any other item" with certain exclusions not relevant here. *Id.* § 1 (emphasis added). We

---

4. The effective date of those provisions was July 1, 1981.

perceive no indication in these provisions suggesting that the Legislature intended contractors to resolve their disputes anywhere but in the administrative forum it created therein.

Significantly, when the General Assembly created the MSBCA, it abolished the DOTBCA and transferred its caseload to the newly created State-wide board. *Id.* § 22. The Chairman and members of the DOTBCA became the Chairman and members of the MSBCA. *Id.* The functions, duties and procedures of the DOTBCA became those of the MSBCA. The multi-step administrative appeals process of the DOTBCA became that of the MSBCA. There is no indication that, in enacting the comprehensive General Procurement Law and its detailed dispute resolution procedures, the General Assembly intended to carve out a small class of appeals and to place them beyond the scope of those enactments. We have recently restated the rule disfavoring interpretations, such as this, that create an "inconsistency" in a statutory scheme. *See In Re Zephrin D.*, 69 Md.App. 755, 760, 519 A.2d 806 (1987).

McLean reads the option to appeal to the MSBCA, provided in § 25, as implying that an alternative forum *must* exist: if not the DOTBCA, then the circuit court. This interpretation is too generous. Section 25 preserves *existing* rights and obligations; it does not create new remedies or procedures. The erstwhile right of contractors to sue the DOT directly in the circuit court was specifically discontinued when the Legislature created the DOTBCA. Without an expressed intention by the Legislature to revive that right, we will not "discover" its re-emergence by implication where, as here, a perfectly competent administrative forum replaced that which was abolished. The right to appeal to the MSBCA created by § 25 was the only remedy available to McLean in light of the demise of the DOTBCA.

■ We agree with the trial court in its holding that: Nowhere [in Chapter 775] is there an intention expressed by the Legislature to return to pre–1978 proce-

dure where the courts heard disputes originally without the benefit of an administrative determination.

In creating the DOTBCA, the General Assembly provided a special statutory remedy that preempted resort to ordinary civil actions. The Legislature then replaced the DOTBCA with the MSBCA. In the laws through which this was accomplished, we perceive no indication that the Legislature intended to reopen the general primary jurisdiction of the circuit courts to DOT contractors. Consequently, we deem that the Legislature intended the MSBCA remedy to be exclusive. *White,* 282 Md. at 649, 387 A.2d 260. McLean was obligated to pursue its remedy there as a prerequisite to circuit court review pursuant to the Administrative Procedures Act.

### *MTA Participation*

Finally, McLean contends that MTA waived any "contractual right" it may have had to an administrative proceeding by inducing McLean to file its action in the circuit court and by its extensive participating in the circuit court proceedings.

■ McLean points to the following language, contained in MTA's Final Decision letter, as the basis for its assertion that it was induced to sue in the circuit court:

[S]ince this contract was entered into prior to the establishment of the Maryland State Board of Contract Appeals, you may alternatively elect to proceed as otherwise permitted by law.

McLean misconstrues the nature of the administrative remedies provided for in its contract: they are not contractual rights, but statutory obligations embodied in a contract. The DOT drafts its procurement contracts to conform to the provisions of the procurement statutes. *See* Md.State Fin. & Proc.Code Ann. § 12–210(a) (1985); *Kennedy Temporaries v. Comptroller of the Treasury,* 57 Md.App. 22, 27, 468 A.2d 1026 (1984). Thus, McLean misplaces its reliance on cases standing for the proposition that the right to

*arbitrate* —purely a contractual right—may be waived by the conduct of the parties. *See, e.g., Gold Coast Mall, Inc. v. Larmar,* 298 Md. 96, 468 A.2d 91 (1983). Contractual provisions requiring McLean to take an appeal to the DOTBCA (and later, by legislative fiat, to the MSBCA) were not an agreement to arbitrate before that body. Those provisions were, instead, a statutory obligation embodied in McLean's contract. We find no authority for the proposition that the obligation to exhaust necessary administrative remedies may be waived by the conduct of the parties.

Parties cannot confer jurisdiction upon a court not competent to resolve the subject matter of their dispute. *Smuck v. Anne Arundel County,* 55 Md.App. 163, 166, 461 A.2d 42 (1983). We have already indicated that the circuit court had no subject matter jurisdiction over McLean's suit. Consequently, nothing the MTA or anyone else (except the General Assembly) could say was capable of placing that suit within the court's general primary jurisdiction.

Finally, MTA's eleven-month participation in the circuit court action in no way conferred jurisdiction upon that body. Like his words, a party's actions are powerless to create subject matter jurisdiction where it does not exist. Further, MTA was free to challenge the jurisdiction of the circuit court at any stage of the proceedings. *See Breedon v. Md. Dept. of Educ.,* 45 Md.App. 73, 82, 411 A.2d 1073 (1980). Neither MTA's participation in or advice concerning the circuit court proceedings waived its right to insist that McLean comply with mandatory administrative procedures.[5]

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.

---

[5]. Whether MTA's actions tolled the 30–day period in which McLean was required to file an appeal with the MSBCA is not before us.

McLean also argued that its interpretation of § 25 does not impair MTA's contractual rights. In affirming the decision of the circuit court, we have rejected McLean's interpretation of § 25. It is, therefore, unnecessary to determine whether the rejected interpretation impairs MTA's contractual rights.