LATROBE BREWING COMPANY *v.* COMPTROLLER
OF THE TREASURY, Etc.

[No. 350, September Term, 1962.]

*Decided June 18, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Paul R. Kach,* with whom was *David Gerber* on the brief, for appellant.

*Russell R. Reno, Jr., Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The Maryland Tax Court granted Latrobe Brewing Company a refund of a portion of the beer taxes it had paid to the Comptroller over a three-year period, and the Baltimore City Court reversed.

In its appeal Latrobe contends, in the face of almost precisely corresponding denials by the Comptroller, that the Tax Court had jurisdiction to decide the matter of the refund (the Comptroller cross-appealed to present his contention on this point), that there had been an erroneous or illegal collection of taxes and that even though it received from its Maryland distributor, as part of the price of the beer it sold, the amount of the claimed excess taxes it had paid, it, as the taxpayer, is the entity entitled to the refund.

Latrobe is a brewer of beer in Pennsylvania. In 1953 it began to sell its product in Maryland. Between January 1956 and August 1959, it sold 46,362,912 seven-ounce bottles of beer to Bond Distributing Company of Baltimore, a wholesale distributor. During that period, Code (1957), Art. 2B, Sec. 136 (a), provided (as it still does) for a tax at the rate of three cents per gallon on all beer sold or delivered by a manufacturer to a wholesale or retail dealer in Maryand, to be paid by the non-resident shipper before the beer comes into Maryland. Sec. 138 of Art. 2B provided that:

> "The Comptroller shall prescribe and furnish suitable certificates or stamps denoting the payment of the tax imposed by this article, and shall, by said method or by assessment or otherwise, cause to be collected, the said tax on any fractional gallon contained in each package. * * *"

This section also authorized the Comptroller to prescribe such methods and devices for payment or collection of the tax to prevent frauds or evasion and such rules and regulations to make such methods or devices effective to secure payment of the tax, as he deemed necessary. Pursuant to this authority the Comptroller issued Regulation 208, which was in effect throughout the period for which the refund is claimed. Regulation 208 required non-resident beer manufacturers to purchase tax paid closures, including cap-crowns, before shipping beer into Maryland. It provided for twelve, sixteen, and thirty-two-ounce closures for which payment at the statutory rate of three cents a gallon was to be made to the Comptroller who, upon receipt, certified to a recognized closure manufacturer the right to release to the beer manufacturer the number of closures (in this case beer bottle caps) for which the tax had been paid. Each closure was required to display the number of ounces for which payment had been made.

Because the Comptroller did not recognize or provide for a seven-ounce closure, Latrobe affixed twelve-ounce caps to its seven-ounce bottles and thus overpaid the tax on each bottle it sold in Maryland, in order to sell its product in the State in the form in which it could compete successfully. In three years these overpayments, the parties agree, totalled $45,537.30.

In 1960 Latrobe sought a refund. The Comptroller disallowed the claim on the grounds (a) that Latrobe had acquiesced in the overpaying, in acceptance of the practice of those who wished to market beer in "off-beat" sized containers in Maryland, and (b) it had passed the tax on to the ultimate consumer. Latrobe appealed to the Maryland Tax Court, which dismissed the appeal, holding that it had jurisdiction to pass on refunds of special taxes only if the tax involved was listed as a special tax in Art. 81 of the Code. The Baltimore City Court (Prendergast, J.) decided in Latrobe's appeal to that court that the Tax Court had jurisdiction to deal with the refund of any special tax, including the tax on beer imposed by Art. 2B, and remanded the case for a hearing on the merits. The Comptroller attempted to appeal to this Court. We dismissed the appeal as not being from a final judgment.

After a hearing on the merits, the Tax Court found for Latrobe and ordered the claimed refund of $45,537.30. On appeal to the Baltimore City Court Judge Foster reversed. He found the regulation of the Comptroller, which did not recognize or permit payment of tax for a closure for less than a twelve-ounce container (said to have been adhered to because of claimed administrative and clerical difficulties in processing the then relatively few requests in Maryland for closures for such small bottles) to have been reasonable, lawful and effective. His thinking, in denying the refund, seems to have been colored by the fact that Latrobe had continued to pay the tax demanded without protest. He said of this: "* * * it leaves the taxpayer on the wrong side of the equities of the situation and in the light of all the circumstances it may have waived any right to a refund."

We find the statutes to compel a result opposite to that he reached. Code (1957), Art. 2B, Sec. 141, provides that there shall be no refund of any excise tax paid under that article except in specified instances including the "overpayment of tax." Code (1957), Art. 81, Sec. 215, provides that "[w]henever any person shall have erroneously or mistakenly paid to any State agency * * * more money for special taxes imposed by this article * * * or shall have paid any special taxes which were erroneously or illegally assessed or collected * * *," he may file a claim for refund with the agency involved. Sec. 216 requires the refund if the agency determines that the claim is just and proper, and its disallowance if it is not. Sec. 217 entitles the claimant or the Comptroller, on behalf of the State, to appeal to the State Tax Commission from any final action of an agency in allowing or disallowing any claim for refund, in whole or in part, and an appeal from its action to the Courts "in the same manner as appeals are permitted from any other action of the State Tax Commission under the provisions of this article."

The Maryland Tax Court was created by Ch. 757 of the Laws of 1959 (Code (1962 Cum. Supp.), Art. 81, Sec. 224). That Chapter also provided (Code (1962 Cum. Supp.), Art. 81, Sec. 247A) that from and after July 1, 1959:

"* * * the term 'State Tax Commission' as used in this article, or in any part of this Code * * * shall be deemed to mean 'State Department of Assessments and Taxation,' provided, however, that if such construction would be unreasonable because such reference is to a judicial or quasi-judicial function beyond the authority of the State Department of Assessments and Taxation, the term 'State Tax Commission' shall be taken to mean 'Maryland Tax Court.' "

Sec. 141 (a) of Art. 2B does not compel a finding of legislative intent that there was to be no right of appeal to the State Tax Commission from the Comptroller's determination not to make a refund of alcoholic beverage taxes. Secs. 215, 216 and 217 of Art. 81 are in terms broad enough to give a right to claim and receive such a refund in proper case and to appeal from its denial. These sections deal with the same general subject matter as Sec. 141 (a) of Art. 2B, and the four sections can be harmoniously construed and given effect. This being so, if the agency involved—in this case, the Comptroller—determines that a claim which Sec. 215, by its terms, says is one which a taxpayer may make, is not, in the language of Sec. 216 of Art. 81, "just and proper," the taxpayer may, under Sec. 217, as modified by Sec. 247A of Art. 81, appeal to the Maryland Tax Court.

Sec. 215 does not, as we read it, have the limited meaning ascribed to it by the Comptroller (and at first by the Tax Court) when he says that it (as supplemented by Secs. 216 and 217) confers a right to refund only in case the tax paid or collected was a special tax specifically listed in Sec. 6 of Art. 81. Sec. 215 divides special taxes into two classifications. The first is "special taxes imposed by this article (Art. 81)." The second, specifically stated alternatively, is "any special taxes which were erroneously or illegally assessed or collected." Sec. 6 of Art. 81 divides "the taxes imposed by this article" into two categories, ordinary taxes and special taxes. Ordinary taxes are defined as "direct taxes imposed in respect of real or personal property * * *." Special taxes are said in

the statute to include certain named taxes, and by necessary implication include all taxes imposed by Art. 81 other than direct taxes, whether specifically listed or not. When the Legislature spoke in Sec. 215 first of a right to claim a refund for overpayment of "special taxes imposed by this article" and then of the same right in respect of "any special taxes which were erroneously or illegally assessed or collected," we think it intended the same meaning for "special taxes" in both instances (taxes other than "direct taxes imposed in respect of real or personal property"), and that it differentiated only in the source of imposition. Sec. 215 in terms applies to "any" special tax without regard to the statute imposing it (and as the Supreme Court said of the word "all" in a tax statute in *Baltimore National Bank v. State Tax Commission, 297* U. S. 209, 212, 215, 80 L. Ed. 586, the word "any" is an "uncompromising" one). We find it to embrace the tax on beer, which is concededly an excise tax and not a direct property tax. *Herman v. Mayor and City Council,* 189 Md. 191.

The view we take was foreshadowed by the decision in *State Tax Commission v. Power Company,* 182 Md. 111, in which the recordation tax, which was not then listed in Art. 81 as a special tax, was treated as one which brought a claim for its refund within the ambit of Sec. 215. It was the view of the Maryland Tax Survey Commission of 1949, expressed at pages 57-58 of its report, and of a former Attorney General of Maryland.[1] The Commission listed alcoholic beverage excise taxes among the seventeen taxes (other than those imposed directly on real or personal property) the assessment of which could not be appealed to the State Tax Commission, and then said:

"In such cases, a claim for refund may be filed with the agency which collected the tax on the ground that it was erroneously or mistakenly paid. From action of the agency with which the refund claim was filed,

---

1. The Attorney General of Maryland expressed the same view at page 12 of his brief in Tawes v. Home Owners' Loan Corp. of Washington, 180 Md. 401.

appeals may be taken to the State Tax Commission
by either the taxpayer or the State Comptroller."

We agree that the Tax Court had jurisdiction to decide the case, and turn to consideration of the merits. We think it clear that the beer taxes here involved were, in the language of Sec. 215 of Art. 81, "erroneously or illegally assessed or collected * * *". The statute does not require that the tax for which refund is claimed shall have been paid under protest, or that acquiescence in payment is a bar. The test is error or illegality in assessment or collection. *Cf. Wasena Housing Corporation v. Levay,* 188 Md. 383, 389; *Baltimore v. Home Credit Co.,* 165 Md. 57; *The George's Creek Coal & Iron Co. v. County Commissioners,* 59 Md. 255. The Legislature imposed the tax at the rate of three cents a gallon, and authorized the Comptroller to provide methods and mechanics to insure its collection at that rate on fractional gallons. It did not authorize him—assuming arguendo that it could—to increase the rate of tax or, because of administrative difficulties in collecting at the statutory rate, to collect more tax than it had imposed, and when he did so, his action was not in accord with law and constituted an erroneous and illegal collection.

The Comptroller's argument that since Latrobe passed the economic impact of the tax on to Bond Distributing Company and Bond passed it on to the ultimate consumer, there would be an impermissible unjust enrichment if Latrobe were allowed the claimed refund, has several fatal weaknesses. There was no showing, and the Tax Court so found, that Bond had passed the tax on to the ultimate consumer. The evidence was to the contrary. It was stipulated, and is conceded, that if Latrobe receives the refund, it will pay it over to Bond. Finally, the modern general rule is that in the absence of a legislative intent to the contrary, the one required by law to do so, who paid the tax, is the one to claim and receive back an overpayment under a statute authorizing a refund. Sec. 215 of Art. 81 expressly authorizes "he" who paid the excess in taxes to claim the refund.

In *Tawes v. Home Owners Loan Corp.,* 180 Md. 401, the

72

corporation had advanced recording fees and the cost of revenue stamps and collected at settlement from the grantees in deeds. This Court refused a refund to the corporation since the law imposed no tax on it. In the case before us, the tax was imposed by law on Latrobe. It is the one entitled to claim the refund. *New Consumers Bread Co. v. Commissioner of Internal Revenue* (C. C. A. 3), 115 F. 2d 162, 164; *Independent Linen Service Co. v. Stone* (Miss.), 6 So. 2d 110; *Benzoline Motor Fuel Co. v. Bollinger* (Ill.), 187 N. E. 657.

The judgment of the Baltimore City Court will be reversed, and the order of the Tax Court in favor of Latrobe reinstated.

> *Judgment reversed, with costs, and order of the Maryland Tax Court allowing Latrobe Brewing Company a refund of taxes of $45,537.30 reinstated.*