808 A.2d 1280

HALLE DEVELOPMENT, INC., et al.,

v.

ANNE ARUNDEL COUNTY, Maryland.

No. 1, Sept. Term, 2002.

Court of Appeals of Maryland.

Oct. 10, 2002.

John R. Greiber, Jr., Glen Burnie, for petitioners/cross-respondent.

Hamilton F. Tyler, Sr. Asst. County Atty. (Linda M. Schuett, County Atty., on brief), Annapolis, for respondent/cross-petitioners.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

CATHELL, Judge.

This case concerns waiver agreements entered into between Halle Development, Inc., Halle Enterprises, Inc., and Arundel Homes, Inc. (petitioners) [1] and Anne Arundel County (respondent) on four occasions between 1989 and 1999. Respondent entered into agreements with petitioners to waive the application of the school capacity requirements of respondent's Adequacy of Public Facilities Ordinance in respect to petitioners' proposed subdivisions in exchange for the payment of money to respondent and, in one instance, the conveyance of land to respondent by petitioners. On September 5, 2000, petitioners brought suit against respondent in the Circuit Court for Anne Arundel County for class action relief seeking a refund of the

---

1. Petitioners are corporations engaged in the land development and construction business.

monies paid and a return of the land conveyed[2] based upon the allegedly unlawful procedure used by respondent of contracting with petitioners for waivers regarding the Adequacy of Public Facilities Ordinance.

On February 16, 2001, the Circuit Court issued a written decision and granted summary judgment for respondents.[3] On March 1, 2001, petitioners filed their Notice of Appeal to the Court of Special Appeals. On December 4, 2001, the intermediate appellate court affirmed, on other grounds, the decision of the trial court in a reported opinion *Halle Development, Inc., et al. v. Anne Arundel County, Maryland,* 141 Md.App. 542, 786 A.2d 48 (2001). On December 18, 2001, petitioners filed a Petition for Writ of Certiorari to this Court. On January 18, 2002, respondent filed its Opposition to Petition for Writ of Certiorari and Conditional Cross–Petition for Writ of Certiorari. On March 6, 2002, we granted both petitions. *Halle v. Anne Arundel County,* 368 Md. 239, 792 A.2d 1177 (2002). Petitioners have presented two questions for our review:[4]

"1. When a chartered County government, **without** the consent of the legislature, admits to '... develop[ing] a "School Fee Agreement" ' as a predicate to granting a waiver of Adequacy of Facilities Ordinance, has that County rated or levied an **aid, charge, tax, burthen** or **fee** under

---

**2.** Hereafter we refer to the money paid and the land conveyed by petitioners to respondent as "fees" or "payments."

**3.** The trial court should not have considered the case, in the first instance, as we shall indicate, *infra.* The case should have been dismissed for the reason stated herein.

**4.** Petitioners, in their brief, did not present any "statement of the questions presented, separately numbered ...." as required by Md. Rule 8–504(3). Accordingly, we could have summarily dismissed the appeal pursuant to Md. Rule 8–504(c). However, because the Court of Special Appeals' opinion is reported, we chose to focus the case on the proper issue, and vacate the intermediate court's opinion, in the expectation that the issues we are unable to address in this case, and that the Court of Special Appeals should not have addressed, may be addressed when more adequately preserved and presented in a future case.

'pretense of contract in violation of Article 14 of the Maryland Declaration of Rights?'

"2. Did the Court of Special Appeals engage in judicial legislation when it found that the County has the power under Article 26, § 2–411(b)(1)[Anne Arundel County Code] to grant a waiver for financial considerations, holding that this section's prohibition in granting a waiver for financial considerations '. . . refers to the developers basis for claiming a waiver and does not refer to [the County's] ability to negotiate a waiver in exchange for compensation?' " [Alteration added.]

Respondent has presented two questions for our review in its Conditional Cross–Petition for Writ of Certiorari: [5]

"1. Did the Court of Special Appeals err when it declined to address the issues raised in AACO's Cross–Appeal?

 A. Did Plaintiffs [petitioners] fail to comply with the notice requirements of the Local Government Tort Claims Act?

 B. Did Plaintiffs fail to exhaust their administrative remedies?

 C. Did Plaintiffs' claim pursuant to 42 U.S.C. § 1983 fail to state a claim upon which relief can be granted?

 D. Were Plaintiffs' claims barred by laches?

"2. Was it necessary for the Court of Special Appeals to reach the merits of Plaintiffs' claims, which included constitutional claims, when it could have decided the case based upon the issues of limitations and *res judicata?* " [Alteration added.]

We shall not reach these issues or address any of the questions presented in the Certiorari Petitions or in the briefs. The trial court should have dismissed this case and not

---

**5.** Respondent did properly recast its certiorari questions in its brief. However, in the interest of consistency and because of the nature of our determination, we have used respondent's certiorari questions.

decided the merits of any of the claims presented by the parties because petitioners have failed to set out a proper cause of action. We hold that under the "voluntary payment rule" [6] petitioners cannot, at this point in time, dispute the school waiver agreements at issue in the case *sub judice* and seek relief in the Courts.[7]

## I. Facts

### a. Anne Arundel County Code Provisions

In 1967, the Anne Arundel County Council adopted the Anne Arundel County Adequacy of Public Facilities Ordinance, codified in the Anne Arundel County Code (AACC), Article 26, sections 2–409 through 2–420.[8] The purpose of the ordinance was to protect the citizens of the County and the environment from proposed residential subdivision developments that failed to demonstrate adequate fire suppression facilities, roads, schools, water supply systems, sewerage systems and storm drainage systems. Article 26 is entitled "**SUBDIVISIONS**"; Title 2 is entitled "**Plat Submission and Approval Procedures**"; Subtitle 4 is entitled "Final Plan Review"; and Part 2 is entitled "*Adequacy of Facilities.*" Article 26, section 2–413 states that a final subdivision plat cannot be approved until the ordinance's requirements have been satisfied.

Article 26, section 2–416(b) provides that, "Within two years following approval of a final subdivision plat, elementary and secondary schools in the service area of the proposed subdivi-

---

6. The terms "voluntary payment rule" and "voluntary payment doctrine" are used interchangeably in our cases.

7. We note that petitioners' only recourse could have been to seek a refund of the fees demanded by respondent at the time when petitioners voluntarily entered into the school waiver agreements. Petitioners might have been able to proceed, via the statutory remedies available to them under the appropriate sections of Article 24, Title 9 of the Maryland Code, discussed *infra*.

8. Unless otherwise stated or apparent from the context, when we hereafter refer to Article 26, we are referring to Article 26 of the Anne Arundel County Code and not to Article 26 of the Maryland Code.

sion shall be adequate to accommodate the school population projected to be generated from the proposed subdivision." Thus, if the existing schools will not be adequate within two years of the approval of the final subdivision plat, the process of subdivision may not move forward; however, Article 26, section 2–411 permits a waiver of any of the requirements of the Adequacy of Public Facilities Ordinance, including the adequacy of schools requirement. Specifically, Article 26, section 2–411(b) reads:

"On request by a subdivider, the Planning and Zoning Officer may waive the application of one or more of the requirements of Part 2 of this subtitle to a proposed subdivision, if the Planning and Zoning Officer finds that:

(1) the application of the requirement to the proposed subdivision would result in peculiar and exceptional practical difficulty to or exceptional and demonstrable undue hardship on the subdivider, other than financial considerations;

(2) the physical features and other characteristics of the proposed subdivision are such that the waiver may be granted without impairing the intent and purpose of the requirement for which the waiver has been requested, the other provision of this article, the Zoning Article, and the General Development Plan;

(3) the grant of the waiver will not endanger or present a threat to the public health, safety, or welfare; and

(4) the waiver is the minimum relief available and necessary to relieve the difficulty or hardship to the subdivider."

With regard to such a request by a subdivider, Article 26, section 2–411(c) provides that "The Planning and Zoning Officer may impose such conditions on the grant of the waiver as are reasonably necessary to further the intent of the requirement for which the waiver was requested and to ensure the protection of the public health, safety, and welfare." Apparently, respondent, based upon this last provision, concluded that it had the authority to require the payment of

additional fees above and beyond State authorized development impact fees[9] as a "condition" for the granting of waivers. While we note that impact fees are the method that the Legislature has devised that authorizes local governments to recoup the costs of developmental impact and that the Legislature has not expressly authorized the additional imposition of waiver fees, that also address developmental impacts under the guise of contractual agreements, we shall not directly address the challenged legality of this Anne Arundel County practice in this case, in that, because of the "voluntary payment rule," petitioners cannot maintain this cause of action.

### b. The School Waiver Agreements

In the case *sub judice*, respondent and petitioners entered into written agreements whereby respondent agreed to issue a waiver of the school capacity requirements of the Adequacy of Public Facilities Ordinance in return for petitioners agreeing to convey land or contribute funds to help alleviate the alleged school capacity problems caused by their residential developments.[10] The four "School Waiver Agreements" at issue and discussed hereafter were executed between 1989 and 1999. Without these agreements, petitioners would not have been able to move forward with the recordation of their subdivisions because respondent would not have waived the requirements of Article 26.[11]

The first of the school waiver agreements was effectuated in 1989 in connection with petitioners' proposed subdivision known as Seven Oaks. Respondent advised petitioners that existing school facilities were not adequate and that a school

---

9. *See* footnote 14 for a description of the statutory authority for the imposition of "impact fees." Impact fees were assessed and collected in these cases, prior to the imposition of the additional charges demanded by the County before it would grant the waivers of Article 26.

10. Pursuant to this procedure created by respondent, respondent collected millions of dollars along with land that was conveyed as a site for a future facility. *See infra.*

11. We do not address the legality of respondent's Adequacy of Public Facilities Ordinance in this case.

waiver fee agreement would be necessary in order to gain approval of petitioners' proposed subdivision. An agreement, entitled "Seven Oaks School Agreement," dated March 22, 1989, was entered into between petitioners and respondent. Pursuant to the terms of this agreement, petitioners agreed to pay $4,700,000, in installments, to respondent. Then in February of 1995, petitioners and respondent entered into a second agreement called the "Old Mill High School Agreement." Pursuant to the terms of this agreement, petitioners agreed to pay respondent $124,000 in exchange for a waiver of the Adequacy of Public Facilities Ordinance's requirements with respect to adequate school facilities, which were, allegedly, lacking for the Cantor Farms Subdivision. Thereafter on March 30, 1995, in connection with a proposed development in the Crofton area, Crofton Farms Development Corp., Severn Valley Farms, Inc., Halle Enterprises, and the Richard's Group of Washington entered into the "Crofton Farms School Agreement," whereby Halle Enterprises agreed to convey a sizeable parcel of land to respondent in exchange for a waiver of the Adequacy of Public Facilities Ordinance's school requirements. The final school waiver agreement at issue in the case at bar was entered into on August 24, 1999, in respect to the proposed subdivision of Walnut View, whereby Arundel Homes and respondent entered into the "Cape St. Clair Elementary School Agreement." Pursuant to this agreement, Arundel Homes paid $34,200 to respondent in exchange for a waiver of the Adequacy of Public Facilities Ordinance's requirements.[12]

Petitioners alleged that they had no knowledge that respondents did not have the ability to grant waivers to the ordinance regarding adequacy of school facilities in exchange for

---

12. In total, respondent collected well over $4,800,000 plus substantial acreage, in respect to the school waivers for the four projects dating back to 1989. So far as the record reflects, none of the money, nor the acreage, has been used to construct any facilities relating to these projects. Nor is the record clear that the money collected is kept in separate specified accounts, separate from the general fund of the county.

financial considerations prior to February 11, 2000, when petitioners alleged that they read an article that appeared in The Baltimore Sun newspaper. This article discussed this practice and, according to petitioners, quoted a county legal representative as stating that the county ordinance [Adequacy of Public Facilities Ordinance] specifically forbids the granting of waivers for financial considerations.

It was not until after they had read this article that petitioners, on September 5, 2000, filed suit against respondent in the Circuit Court for Anne Arundel County.[13] Petitioners alleged, *inter alia*, that respondent's collection of school waiver fees, be it the money or the property, from developers as a condition to recording their subdivisions was tantamount to an illegal excise tax without enabling statutory authority from the Maryland Legislature. On February 16, 2001, the Circuit Court issued an opinion and order which granted respondent's motion for summary judgment and denied petitioners' motion

---

**13.** There was earlier litigation between the parties regarding the Seven Oaks Agreement and the Old Mill High School Agreement. Litigation first arose in 1990 when there was a dispute between Halle Development and Anne Arundel County when the Seven Oaks Subdivision was reduced in size to less than the 4,767 expected dwelling units. The dispute was over the payment of the amounts contained in the Seven Oaks waiver agreement due to this size reduction. On October 11, 1990, Halle Development filed suit in the Circuit Court for Anne Arundel County against the County seeking adjudication of its liability under the agreement. The County filed a counterclaim for failure to make the last payment under the agreement. On January 16, 1992, the parties entered into a settlement agreement, whereby the total amount due was reduced and Halle Development agreed to transfer real property to be used as a future school site. On July 1, 1992, Halle Development defaulted under the settlement agreement and filed a bankruptcy petition pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland. Eventually, on June 9, 1993, the parties again settled their differences and this settlement was approved by the United Sates Bankruptcy Court.

Then, on August 6, 1997, Halle Development filed suit in the Circuit Court for Anne Arundel County challenging the Old Mill High School Agreement dated February 21, 1995, alleging an unconstitutional taking in violation of the Fifth Amendment based upon new projections indicating that the school facilities were adequate. Summary judgment was entered in favor of Halle Development.

for summary judgment. The Circuit Court found that petitioners' claims were barred by the statute of limitations and *res judicata*, that petitioners' common law tort claims were barred by failure to give notice under the Local Government Tort Claims Act, and that respondent had the authority and power to collect the money and to accept the conveyances of land called for in the waiver agreements. Petitioners appealed to the Court of Special Appeals, which declined to address the trial court's findings on the issues of limitations, laches, or *res judicata* and rejected the lower court's findings regarding respondent's authority to impose such a "tax" but, nevertheless, held that the waiver agreements were valid contracts. The Court of Special Appeals further held that waiver authority was found in the reading of both Article 24 [14] and 26 of the AACC for respondent to raise revenue for capital improvements or receive compensation in the manner of the agreements at issue in the case *sub judice* and that the compensation received was not a tax.[15] Petitioners then noted an appeal to this Court and respondents noted a cross-appeal.

---

**14.** Title 7 of Article 24 (Planning and Development) of the Anne Arundel County Code governs development impact fees. Article 24, section 7–102 states that the purpose of the ordinance is to require new development to pay its fair share of costs for "land, capital facilities, and other expenses necessary to accommodate developmental impacts on public school, transportation, and public safety facilities." Respondent asserts that it complements the sections of Article 26 at issue in the case at bar specific to school capacity requirements (Article 26 of the County Code does not expressly permit the purchasing of waivers). Article 24 of the AACC was passed by the Anne Arundel County Council pursuant to enabling authority derived from Chapter 350, Laws of Maryland 1986. By this enactment, the Legislature authorized respondent to fix and collect development impact fees for financing the capital costs of additional or expanded public works, improvements, and facilities required to accommodate new construction or development. There was no State statute expressly authorizing the selling of waivers as "conditions" under Article 26 of the AACC.

There is also an Article 24, Title 9, of the Maryland Code. Certain sections of that Title provide the procedure to claim refunds of fees, taxes, charges, etc. imposed by county and municipal governments. We shall discuss that Article 24, *infra*.

**15.** As we have indicated, we do not expressly reach whether the fees in this case were "taxes," although they resemble taxes.

## II. Discussion

### a. Voluntary Payment Rule

 As stated *supra*, the voluntary payment rule [16] is applicable to the facts of the case at bar. We shall not resolve the questions presented by either party for our review. We shall vacate the Court of Special Appeals' judgment. In the case *sub judice*, petitioners were faced with the delay of their proposed subdivisions due to the requirements of the Adequacy of Public Facilities Ordinance and voluntarily entered into the school waiver agreements to avoid a delay in construction. Both parties benefitted from these waiver agreements and petitioners have already received at least substantial benefits from the agreements, *i.e.*, the ability to complete their subdivisions. Under the "voluntary payment rule," petitioners cannot, now, question the legality of these agreements or respondent's ability to enter into such waiver agreements in an attempt to regain the fees paid to respondent.

The record of this case does not reveal that respondent has relied on the "voluntary payment doctrine" as a defense in this case. Although we found the doctrine inapplicable under the circumstances of that case, in *Ash Dua, et al. v. Comcast Cable of Maryland, Inc., et al.; Douglas Harvey v. Kaiser Foundation Health Plan of the Mid–Atlantic States, Inc.*, 370 Md. 604, 805 A.2d 1061 (2002), Judge Eldridge, writing for this Court, discussed the voluntary payment doctrine:

> "They rely on the general common law rule that, when one voluntarily pays money under a mistake of law, the payor may not ordinarily bring a common law action for the recovery of the money. He may sue for a return on the money only if the right to recover it is provided for by statute. In Maryland, this common law principle, often referred to as the 'voluntary payment doctrine,' has most

---

**16.** The common law voluntary payment rule has been present in case law from our State courts since the 1840s. *See, e.g., Baltimore & S.R. Co. v. Faunce*, 6 Gill 68, 46 Am. Dec. 655 (1847) ("a party cannot recover money voluntarily paid with a full knowledge of all the facts, although no obligation to make such payment existed.").

often been applied where there is a mistaken payment of taxes or other government fees. *See, e.g. Bowman v. Goad,* 348 Md. 199, 202–204, 703 A.2d 144 (1997), and cases there collected.

. . .

"... the general principle, that the common law does not recognize an action to recover money voluntarily paid under mistake of law, is obviously inapplicable under circumstances where the common law specifically recognizes an action to recover excess interest which had been voluntarily paid." *Id.* at 646, 805 A.2d at 1085–086. [Citations omitted.]

Therefore, the principle issue is whether petitioners' payments were voluntarily made within the meaning of the common law rule. We hold that the payments at issue in the case *sub judice* were voluntary payments on the part of petitioners and the general principle that the common law does not recognize an action to recover money voluntarily paid under a mistake of law is applicable under the circumstances here present. To further elaborate on the voluntary payment doctrine, most recently discussed in *Dua,* we look to case law from our state and other jurisdictions.

In *Bowman v. Goad,* 348 Md. 199, 703 A.2d 144 (1997) we did not reach any of the issues presented because Bowman failed to set forth a cause of action in his complaint due to the fact that there was no statutory remedy permitting Bowman's suit and that the refund of fees he and others in his class sought was prohibited by the voluntary payment rule. In *Bowman,* the issue was whether certain fees, collected by sheriffs in the State, for serving process in motor vehicle prosecutions were wrongfully required by the sheriffs, to be paid by Bowman and others. We held that the trial court should not have decided the merits of the case and that this Court was not able to reach the issues presented due to the voluntary payment rule. We held that the fact that the General Assembly had provided broad administrative refund

remedies covering almost every type of tax, fee or charge improperly collected by a Maryland governmental entity meant that Bowman and those in his class would have been limited to their exclusive administrative remedy for a refund. In *Bowman* we stated:

> "The controlling principles were summarized by this Court in *Apostol v. Anne Arundel County*, 288 Md. 667, 672–673, 421 A.2d 582, 585 (1980), as follows:
>
> > 'It is firmly established in this State that once a taxpayer voluntarily pays a tax or *other governmental charge*,[17] *under a mistake of law or under what he regards as an illegal imposition, no common law action lies for the recovery of the tax absent a special statutory provision sanctioning a refund.... Where there is a special statutory provision sanctioning a refund, although no particular statutory remedy is provided, an action in assumpsit is available.... [W]here there is statutory authorization for a refund and a special statutory remedy set forth, that remedy is exclusive.*
>
> > \*　　\*　　\*　　\*　　\*　　\*
>
> > 'Furthermore, the rule that no action lies to challenge the validity of a tax paid under a mistake of law, except for any refund sanction specifically provided by the Legislature, has been applied consistently by this Court, regardless of the nature of the legal attack mounted or the type of mistake of law claimed.'
>
> "Moreover, for reasons of public policy, this Court will sua sponte [18] raise and apply the above-summarized principles. *See, e.g., Nordheimer v. Montgomery County*, 307 Md. 85,

---

**17.** We note that regardless of what label petitioners' attempt to give to the fees given to respondent, be it "tax" or "fee," or a "governmental charge," under the facts of this case petitioners cannot recover due to the applicability of the voluntary payment doctrine.

**18.** Respondent did not raise the voluntary payment rule as a defense to petitioners' claims. We invoke the voluntary payment rule sua sponte in the case at bar.

96, 512 A.2d 379, 385–386 (1986); *Potomac Elec. v. P.G. County,* 298 Md. 185, 189, 468 A.2d 325, 327 (1983).

"The general doctrine that payments of taxes or *other governmental fees* or charges, voluntarily made under a mistake of law, are not recoverable in a common law action, and that any statutorily proscribed refund procedure is ordinarily the exclusive remedy, has been applied by this Court in a wide variety of situations. In addition to the cases previously cited, *see, e.g., Wash. Sub. San. Com'n v. C.I. Mitchell & Best,* 303 Md. 544, 572–578, 495 A.2d 30, 44–48 (1985) (allegedly unauthorized water and sewer connection charges, paid by developers could not be recovered in a declaratory judgment or common law action, because the charges were 'voluntarily paid' even though the developers could not obtain plumbing or building permits without first paying the connection charges); *White v. Prince George's County,* 282 Md. 641, 646, 650–654, 387 A.2d 260, 263–264, 266–268 (1978) (tax claimed to be unconstitutionally retroactive); *Rapley v. Montgomery County,* 261 Md. 98, 103–110, 274 A.2d 124, 127, 131 (1971) (transfer taxes, paid under protest and challenged on constitutional grounds, not recoverable in a common law action); *Wasena Housing Corp. v. Levay,* 188 Md. 383, 387–391, 52 A.2d 903, 905–907 (1947) (property taxes, paid under protest and required to be paid for the deed to be recorded, were 'voluntarily paid' and could not be recovered in common law action); *Red Star Line v. Baughman,* 153 Md. 607, 611, 139 A. 291, 293 (1927) (involved license fees claimed to be unconstitutional under the Commerce Clause); *Helser v. State,* 128 Md. 228, 231, 97 A. 539, 540 (1916); *Baltimore v. Harvey,* 118 Md. 275, 277–278, 84 A. 487, 490–491 (1912); *Monticello Distilling Co. v. Baltimore City,* 90 Md. 416, 433, 45 A. 210, 214 (1900); *Mayor, etc. of Baltimore v. Hussey,* 67 Md. 112, 115–117, 9 A. 19, 20–21 (1887); *Lester v. Mayor, and City Council of Baltimore,* 29 Md. 415, 417–420 (1868); *Morris v. Mayor and C.C. of Balt.,* 5 Gill. 244, 248 (1847); *M. & C.C. of Balt. v. Lefferman,* 4 Gill 425, 430–431 (1846).

"Furthermore, the General Assembly has now provided broad administrative refund remedies covering every type of tax, *fee*, or charge improperly collected by a Maryland governmental entity. Code (1988), § 13–901(a)(2) of the Tax–General Article authorizes a refund claim by a claimant who 'pays to the State a tax, fee, charge, interest, or penalty that is erroneously, illegally, or wrongfully assessed or collected in any manner....' Code (1957, 1996 Repl.Vol.), Art. 24, § 9–710, authorizes an administrative refund claim by a claimant who '[p]ays to a county or municipal corporation a tax, *fee*, charge, interest, or penalty that is erroneously, illegally, or wrongfully assessed or collected in any manner.' If the defendant sheriffs had unlawfully collected fees from the plaintiff Bowman and the other members of the putative class, each one had an administrative remedy. As our cases make clear, that administrative remedy is exclusive. *Nordheimer v. Montgomery County, supra*, 307 Md. at 97, 512 A.2d at 385; *Apostol v. Anne Arundel County, supra*, 288 Md. at 672, 421 A.2d at 585; *White v. Prince George's Co., supra*, 282 Md. at 650–654, 387 A.2d at 265–268." *Id.* at 202–04, 703 A.2d at 145–46. [Emphasis added.]

In *Washington Suburban*, cited above, the facts were similar to the facts of the case *sub judice*. There, we held that the developers could not recover the allegedly unauthorized water and sewer connection charges because the charges were voluntarily paid. Like petitioners in this case, the developers in *Washington Suburban* had to pay the connection charges in order to obtain plumbing and building permits for their construction projects. We reaffirmed the application of the voluntary payment rule and stated that "[t]here may not be any recovery of the charges paid, however, because of Maryland's stringent voluntary payment rule." *Washington Suburban*, 303 Md. at 549, 495 A.2d at 32.

Similarly, some of our sister jurisdictions have used the voluntary payment doctrine to bar recovery of taxes, fees or the like, both legally or illegally collected, when voluntarily paid out by a party. *See Sierra Investment Corp. v. County*

*of Sacramento,* 252 Cal.App.2d 339, 60 Cal.Rptr. 519 (1967) (stating how the voluntary payment doctrine followed in California and most other states is settled and bars recovery of taxes voluntarily and freely paid in absence of a statute permitting a refund); *Telescripps Cable Co. v. Welsh,* 247 Ga.App. 282, 542 S.E.2d 640 (2000) (holding that the voluntary payment doctrine barred plaintiff's claims for recovery of late fees when plaintiffs voluntarily paid the late fee after it was assessed and plaintiffs asserted no deception or fraudulent practice, merely claiming ignorance of the law); *Twiggs County v. Oconee Electric Membership Corp.,* 245 Ga.App. 231, 536 S.E.2d 553 (2000) (denying to the plaintiff recovery of sums where the plaintiff voluntarily paid invoices due on contracts between the parties and stating that the plaintiff should have asserted its defenses not after payment, but rather at the time the invoices were submitted by the defendant); *Chinchurreta v. Evergreen Mgmt. Inc.,* 117 Idaho 591, 790 P.2d 372 (1989) (discussing voluntary payments in general and stating how a person cannot, by way of direct action, recover money voluntarily paid with the full knowledge of all the facts and without fraud, duress or extortion even when no obligation to make the payment existed); *Sullivan v. Board of Comm'rs of Oak Lawn Park District, et al.,* 318 Ill.App.3d 1067, 743 N.E.2d 1057 (2001) (affirming that taxes voluntarily paid, even erroneously, cannot be recovered unless recovery is authorized by statute); *Illinois Graphics Co., et al. v. Nickum,* 159 Ill.2d 469, 639 N.E.2d 1282 (1994) (stating the rule that absent certain circumstances, such as fraud or mistake of fact, money voluntarily paid under a claim of right to the payment, with full knowledge of the facts, cannot be recovered unless there are circumstances amounting to compulsion); *Bass v. South Cook County Mosquito Abatement District,* 236 Ill.App.3d 466, 603 N.E.2d 749 (1992) (referring to the well-settled principle known as the voluntary payment doctrine and how taxes voluntarily paid, even if erroneously, cannot be recovered unless recovery is authorized by statute).

### b. Refund Remedies

■ The only statutory provisions that we are aware of, which could possibly authorize a refund of the kind of fees or taxes in this case are Md.Code (1988, 1997 Repl.Vol., 2001 Supp.) § 13–901(a)(2) of the Tax–General Article governing refunds in respect to the State and Md.Code (1957, 2001 Repl.Vol.) Art. 24, § 9–710, *et seq.* governing revenue and taxes and providing remedies for refunds of county and municipal fees, taxes and charges.

Section 13–901(a)(2) of the Tax–General Article authorizes a refund claim against the State by a claimant who "pays to the State a tax, fee, charge, interest, or penalty that is erroneously, illegally, or wrongfully assessed or collected in any manner." Section 9–710(2) of Article 24 similarly authorizes an administrative refund claim by a claimant who "pays to a county or municipal corporation a tax, fee, charge, interest, or penalty that is erroneously, illegally, or wrongfully assessed or collected in any manner." A refund might have been appropriate if the tax court deemed the fees paid to be an illegal tax, fee or governmental charge, one of the same arguments petitioners now assert.

In *Apostol v. Anne Arundel County,* 288 Md. 667, 672, 421 A.2d 582, 585 (1980), we stated:

"It is firmly established in this State that once a taxpayer voluntarily pays a tax or other governmental charge, under a mistake of law or under what he regards as an illegal imposition, no common law action lies for the recovery of the tax absent a special statutory provision sanctioning a refund. *This is true even if payment is made under protest.* Moreover, in these circumstances, no common law or declaratory judgment action lies to challenge the validity of a tax so paid. Where there is a special statutory provision sanctioning a refund ... that remedy is exclusive." [Emphasis added.] [19]

---

**19.** *See also Latrobe Brewing Co. v. Comptroller of the Treas.,* 232 Md. 64, 192 A.2d 101 (1963).

Title 13 of the Tax–General Article applicable to the State provides the procedure to be used by a claimant seeking a State refund. Section 13–903 states that "A claim for a refund shall be filed within the time required under § 13–1104 of this title." Section 13–1104(a) provides in respect to State taxes "*In general.*—Except as otherwise provided in this section, a claim for a refund under this article maybe not be filed after 3 years from the date the tax, interest, or penalty was paid." Title 13 then states:

" § **13–510. Appeal to Tax Court.**

(a) *In general.*—Except as provided in subsection (b) of this section and subject to § 13–514 of this subtitle, within 30 days after the date on which a notice is mailed, a person or governmental unit that is aggrieved by the action in the notice may appeal to the Tax Court from:

(1) a final assessment of tax, interest, or penalty under this article . . . ."

Following a final order of the Tax Court, if dissatisfied, a petitioner can then seek judicial review. The relevant portions of Section 13–532 state:

"(a) *In general.*—(1) A final order of the Tax Court is subject to judicial review as provided for contested cases in §§ 10–222 and 10–223 of the State Government Article.

(2) Any party to the Tax Court proceeding, including a governmental unit, may appeal a final order of the Tax Court to the circuit court."

The provisions of Md.Code, Article 24 applicable to counties and municipal subdivisions almost mirror the provisions of the Tax–General Article regarding the procedure for making a claim for a refund from the State and seeking judicial review of the determination of such a claim. Article 24, § 9–712, calls for an investigation and hearing by the appropriate tax collector and § 9–712(d) reads;

"*Appeal.*—(1) Except as provided in paragraph (2) of this subsection, within 30 days after the date on which a notice is mailed, a person who is aggrieved by the action in the notice may appeal to the Maryland Tax Court in the manner

allowed in Title 13, Subtitle 5, Parts IV and V of the Tax–General Article.

(2) If a tax collector does not make a determination on a claim for a refund within 6 months after the claim is filed, the claimant may:

(i) Consider the claim as being disallowed; and

(ii) Appeal the disallowance to the Tax Court."

Article 24, § 9–724 states that "A claim for a refund under this title may not be filed after 3 years from the date the tax, interest, or penalty was paid."

Petitioners have not availed themselves of the statutory remedy provided. An Article 24 refund claim and a denial of that claim by the collectors would have met the requirements permitting petitioners to appeal, and to have their claims decided by the tax court and then, potentially, reviewed by the circuit court, and then, if necessary, appealed to the appellate courts.

Petitioners did not elect to use the statutory remedies available to them when they first executed the now "allegedly" illegal school waiver agreements with respondent.

## IV. Conclusion

In the present case there is a sufficient factual basis to warrant the application of the voluntary payment doctrine as a bar to petitioners' recovery of the fees paid to respondent specific to the four school waiver agreements. In line with our cases of *Dua, Bowman* and *Rockville, the many other cases in the same vein referenced* supra *in* Bowman *and the out of state cases invoking the voluntary payment rule as a bar to recovery, we do not reach the merits of petitioners' claims. The circuit court should not have decided the issues on the basis that it did in granting respondent's motion for Summary Judgment. It should have dismissed the complaint for the reason we have stated. The Court of Special Appeals should have ordered the dismissal of the case, sua sponte, for the reasons we state herein.*

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT AND TO REMAND THE CASE TO THE CIRCUIT COURT WITH DIRECTIONS TO DISMISS THE COMPLAINT FOR THE REASONS STATED HEREIN. COSTS TO BE PAID BY PETITIONERS.**