PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-2586

LAWRENCE GWOZDZ, Individually and on behalf of Donna Gwozdz
and all others similarly situated,

Plaintiff - Appellant,

v.

HEALTHPORT TECHNOLOGIES, LLC,

Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Roger W. Titus, Senior District Judge.
(8:15-cv-02251-RWT)

Argued:  December 9, 2016            Decided:  January 24, 2017

Before WILKINSON, NIEMEYER, and DIAZ, Circuit Judges.

Vacated and remanded with instructions by published opinion.
Judge Wilkinson wrote the opinion, in which Judge Niemeyer and
Judge Diaz joined.

**ARGUED**:  Jonathan  Barry  Nace,  ANTONOPLOS  &  ASSOCIATES,
Washington, D.C., for Appellant.  Alec Winfield Farr, BRYAN CAVE
LLP, Washington, D.C., for Appellee.  **ON BRIEF**: Barry J. Nace,
PAULSON & NACE, PLLC, Washington, D.C., for Appellant.

WILKINSON, Circuit Judge:

Lawrence Gwozdz challenges HealthPort's collection of $23 in sales tax on the sale of medical records. Under the Tax Injunction Act (TIA), federal courts may not "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Here, Maryland has established just such a remedy. Because the TIA and the related principle of federal-state comity operate to deprive us of jurisdiction, we vacate the judgment of dismissal and remand to the district court with instructions to return the action to state court. See Lawyer v. Hilton Head Pub. Serv. Dist. No. 1, 220 F.3d 298, 306 (4th Cir. 2000) (remanding removed portion of consolidated case to state court due to jurisdictional bar of TIA).

I.

Gwozdz requested his wife's medical records from two Maryland hospitals, which forwarded his inquiries to their contractor, HealthPort Technologies, LLC. Before releasing the documents, HealthPort sent Gwozdz two itemized invoices demanding that he pay a total of $23 in sales tax, along with other fees. Gwozdz protested, insisting that Maryland exempted the sale of medical records from its general sales tax and that the $23 charge was therefore unlawful. HealthPort defended the

2

tax and refused to send the records unless Gwozdz pre-paid in full. Despite his misgivings, he did so.

Next, Gwozdz filed a class action complaint against HealthPort in Maryland state court seeking damages and injunctive relief. HealthPort removed the case under the Class Action Fairness Act. Instead of requesting a refund, the typical relief sought for an improperly paid tax, the operative complaint asserts several statutory consumer protection claims and a hodgepodge of common law claims including fraud, negligent misrepresentation, and unjust enrichment.

HealthPort moved to dismiss under Fed. R. Civ. P. 12(b)(6). It argued that Maryland created an exclusive administrative procedure for settling tax disputes. Gwozdz responded that the administrative remedy was inapplicable because the case concerned an unlawful billing practice, not an improper tax. Gwozdz sought to have the district court resolve his claims on the merits.

The district court, ruling from the bench, sided with HealthPort and dismissed the complaint in its entirety. The court concluded that "the exclusive remedy for the recovery of taxes on the sale of medical records that are alleged to have been improper is to seek a refund from the comptroller under the procedures established by Maryland law." J.A. 221.

II.

A.

It is important at the outset to review Maryland's administrative refund procedure inasmuch as the TIA's operation depends upon the state's establishment of an appropriate remedy for a taxpayer to pursue. The Maryland legislature established "a comprehensive remedial scheme for the refund of taxes erroneously paid." White v. Prince George's Cty., 387 A.2d 260, 264 (Md. 1978). A taxpayer begins by requesting reimbursement from the Comptroller: the Maryland Tax Code provides that one who "pays to the State a tax, fee, charge, interest, or penalty that is erroneously, illegally, or wrongfully assessed or collected in any manner" may file a claim with the Comptroller for a refund. Md. Code Ann., Tax-Gen. § 13-901(a)(2); see also id. § 13-508(a)(2). The taxpayer may request an informal hearing, id. § 13-904(a)(2), and may appeal the Comptroller's final determination to the Maryland Tax Court, id. § 13-510(a)(2). Any dissatisfied party may appeal the Tax Court's decision to the Maryland circuit court. Id. § 13-532(a)(2). This administrative remedy encompasses "every type of tax, fee, or charge improperly collected by a Maryland governmental entity." Brutus 630, LLC v. Town of Bel Air, 139 A.3d 957, 967 (Md. 2016) (emphasis omitted) (quoting Bowman v. Goad, 703 A.2d 144, 146 (Md. 1997)).

4

Maryland courts have uniformly held that the administrative remedy is a taxpayer's sole route to relief. "[W]here there is statutory authorization for a refund and a special statutory remedy set forth," the Maryland Court of Appeals explained, "that remedy is exclusive." Apostol v. Anne Arundel Cty., 421 A.2d 582, 585 (Md. 1980); see Halle Dev., Inc. v. Anne Arundel Cty., 808 A.2d 1280, 1290 (Md. 2002). Beyond the administrative scheme, "no action lies to challenge the validity of a tax paid under a mistake of law . . . regardless of the nature of the legal attack mounted." Apostol, 421 A.2d at 585.

The Maryland Court of Appeals applied this rule in Bowman v. Goad, a case with facts similar to those alleged here. The plaintiff in Bowman brought a putative class action against county sheriffs to recover erroneously charged fees. Bowman, 703 A.2d at 144. If the sheriffs had indeed "unlawfully collected fees from the plaintiff Bowman and the other members of the putative class, each one had an administrative remedy [and] that administrative remedy is exclusive." Id. at 146.

Gwozdz does not contend in any non-conclusory manner that the remedial scheme described above was in any way defective. The fact that his initial remedy is an administrative one (followed by judicial review) does not place it outside the TIA's purview. Nor does the provision of initial administrative

5

exclusivity remove the state's collection procedures from the protection of the Act.

B.

Gwozdz counters with a sleight of hand, arguing that he is not a taxpayer disputing an improper tax but a consumer challenging an unlawful billing practice. But artful pleading cannot remove this case from the broad reach of Maryland's administrative remedy.

First, Gwozdz surmises that buyers like him are ineligible for an administrative refund because vendors such as HealthPort are the real taxpayers under the Maryland Tax Code. To reach this interpretation, Gwozdz has to select some code provisions and ignore others because the code's plain language debunks his theory. The Tax Code unmistakably states that the buyer "shall pay the sales and use tax to the vendor" and the vendor "shall collect the . . . tax from the buyer." Md. Code Ann., Tax-Gen. § 11-403. In collecting the sales tax, a vendor "is a trustee for the State and is liable for the collection of the sales . . . tax for and on account of the State." Id. § 11-401(a). Under this scheme, then, suits against vendors have the same potential of disrupting state tax collection efforts as suits against the state itself. Although a vendor may "assume or absorb" the tax and pay on the buyer's behalf, id. § 11-402, HealthPort declined to do so, identifying the charges as sales tax on its invoices.

6

Gwozdz paid the tax to Maryland (via HealthPort) and could have taken advantage of Maryland's administrative remedy if he thought the tax improper.

Second, Gwozdz contends that the administrative refund scheme does not preclude common law and statutory causes of action that are external to the Tax Code, such as his claims against HealthPort for fraud and consumer protection violations. We reject, however, Gwozdz's attempt to characterize this action as anything but a tax case. In his view, the "gravamen" of the complaint "is not that he paid unlawful taxes, but that Health[P]ort has engaged in an unlawful billing practice." Br. of Appellant at 18. But each of his assorted claims turns on whether HealthPort's collection of the tax was improper under the Maryland Tax Code. It is perfectly plain that Gwozdz seeks relief for paying a tax that he believes was improper.[*]

### III.

As noted, the Tax Injunction Act removes the jurisdiction of federal courts over any action that would "enjoin, suspend or

---

[*] Gwozdz brings claims under the Maryland Consumer Protection Act, the Maryland Consumer Debt Collection Act, and the Fair Debt Collection Practices Act as well as claims for fraud, constructive fraud, negligent misrepresentation, unjust enrichment, and conversion. As the district court recognized, none of the assortment of claims in the amended complaint changes the nature of this lawsuit. It has been, and remains, a suit against a vendor for wrongly assessing a sales tax on behalf of a state government.

restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Like its federal counterpart, the Anti-Injunction Act, the TIA ensures that states are able to "assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference." Bob Jones Univ. v. Simon, 416 U.S. 725, 736 (1974). While Gwozdz purports to raise a federal claim under the Fair Debt Collection Practices Act, the TIA makes no distinction between federal and state law claims that serve to disrupt the state's tax collection efforts.

In Hibbs v. Winn, 542 U.S. 88 (2004), the Supreme Court entertained a challenge to the constitutionality of a tax credit for donations to non-profit organizations that award scholarships for private schools. The Court held that the TIA did not bar constitutional challenges to the tax credits authorized by state law. Id. at 93. The Court noted that it had heard such cases "without conceiving of § 1341 as a jurisdictional barrier." Id. Hibbs, then, stands for the proposition that not every constitutional claim bearing even indirectly on the subject of state taxes is jurisdictionally barred.

Hibbs, however, stopped well short of stripping the TIA of all jurisdictional force. In fact, Hibbs itself expressly

8

deploys jurisdictional language. It recognizes that the TIA "was designed expressly to restrict the jurisdiction of the district courts of the United States over suits relating to the collection of State taxes." Id. at 104 (internal quotation marks omitted); see also id. at 107 ("We have read harmoniously the § 1341 instruction conditioning the jurisdictional bar on the availability of 'a plain, speedy and efficient remedy' in state court."). The Hibbs opinion as a whole underscores that the purpose of the TIA was to "'limit drastically' federal-court interference with 'the collection of [state] taxes.'" Id. at 105 (quoting California v. Grace Brethren Church, 457 U.S. 393, 408– 09 (1982)). Such interference is exactly what this suit portends. Gwozdz's allegation that the tax was collected improperly is the foundation for all of his claims.

Whereas Hibbs was willing to entertain an Establishment Clause challenge to a tax credit allegedly supporting or favoring parochial schools, the gravamen of this suit is far different. Gwozdz's direct challenge to an actual tax collection is both far away from the subject matter of Hibbs and much closer to the heart of state collection activities. (In fact, invalidation of the tax credit at issue in Hibbs on constitutional grounds would only have augmented the state's coffers. See id. at 106.) Because Congress enacted the TIA "to stop taxpayers, with the aid of a federal injunction, from

9

withholding large sums, thereby disrupting state government finances," id. at 104, the TIA plainly bars Gwozdz's claims for equitable relief.

Gwozdz included claims for damages in addition to his claims for equitable relief. The TIA applies by its terms to suits to "enjoin" or "restrain" state tax collection efforts, thereby speaking directly to equitable remedies. That does not mean, however, that the text and purposes of the TIA suddenly become null and void where a taxpayer's claim for damages is advanced. For as we have noted, the Act sounds the sharpest kind of warning to a federal court that would interfere with the sovereign interest of the states in their own systems of taxation. A claim for damages against vendors in the performance of their tax collection duties has precisely the same potential as a claim for equitable relief to disrupt a state's entire system of revenue collection.

While the Supreme Court has not addressed whether the TIA forbids damages claims, it has applied a principle of comity to bar a Section 1983 action by landowners against state and local officials seeking damages for the allegedly unconstitutional administration of a state tax system. See Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 113 (1981) (noting that damages actions "would be fully as intrusive as . . . equitable actions"). The Court has since reaffirmed that

10

the comity principle is "more embracive than the TIA." <u>Levin v. Commerce Energy, Inc.</u>, 560 U.S. 413, 424 (2010).

Moreover, the Ninth Circuit recently concluded that a federal district court lacked the power to award damages or injunctive relief for payroll taxes that were allegedly withheld unlawfully: "Any award of statutory damages here would have the same disruptive effect as entry of a declaratory judgment or issuance of an injunction, thereby undermining the state-revenue-protective objectives of the Tax Injunction Act." <u>Fredrickson v. Starbucks Corp.</u>, 840 F.3d 1119, 1124 (9th Cir. 2016). Indeed, if comity is to mean anything, it would seemingly restrain the prospect of federal court orders disrupting a state's efforts to collect its life blood of revenue pursuant to the state's own law. Hence, this basic principle of comity bars Gwozdz's damages claims.

IV.

It is no secret that "taxpayers may strive to dispute their tax liability, either armed with valid challenges or equipped with unfounded ones, beyond the avenues provided by the legislature." <u>Comptroller of the Treasury v. Zorzit</u>, 108 A.3d 581, 595 (Md. Ct. Spec. App. 2015). But if taxpayers could "seek relief collateral to the detailed administrative procedures governing tax assessment and collection at their will, tax litigation would be rampant, thereby vitiating the intent of the

11

legislature." Id. at 596. And if Gwozdz prevailed here, aggrieved taxpayers could repackage an allegedly unlawful sales tax collection into a faux consumer protection suit and embroil vendors of every description in litigation, thus punishing sellers for fulfilling their obligations to collect sales taxes under Maryland law. This is precisely what Maryland's administrative remedy was designed to prevent. While we believe based upon our reading of Maryland law that a remand to the administrative process lies in the offing for Mr. Gwozdz, that clearly is a decision for the Maryland courts to make. Accordingly, we vacate the district court's judgment and remand with instructions to remand the action to state court.

VACATED AND REMANDED WITH INSTRUCTIONS

12